## O'DELL PERRY v. STATE.

No.A-10396.    March 14, 1945.

(157 P. 2d 217.)

H. I. Aston, of McAlester, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Paul Gotcher, Co. Atty., of McAlester, for defendant in error.

BAREFOOT, P. J.   Defendant, O'Dell Perry, was charged in the district court of Pittsburg county with the crime of "escaping from a state prison"; was tried, convicted and sentenced to serve a term of two years in the State Penitentiary, and has appealed.

An information was filed in the district court of Pittsburg county on June 30, 1942, the charging part of which was as follows:

"... that O'Dell Perry did, in Pittsburgh County and the state of Oklahoma, on or about the 8th day of April, in the year of our Lord One Thousand Nine Hundred and Forty-two, and anterior to the presentment hereof, then and there unlawfully, willfully, wrongfully and feloniously commit the crime of escaping from a state prison in

the manner and form as follows, to-wit: That on the 26th day of November, 1933, the said O'Dell Perry was duly committed to a state prison, to-wit: The Oklahoma State Penitentiary located at McAlester, Oklahoma, said commitment being from the District Court of Muskogee County, Oklahoma, ordering the Warden of the Oklahoma State Penitentiary to confine the said O'Dell Perry for a term of 50 years for the crime of Robbery with Firearms, which the said O'Dell Perry had been duly and legally convicted in Muskogee County, Oklahoma; that thereupon the said O'Dell Perry became prisoner #28841 of the Oklahoma State Penitentiary, and was such prisoner on the 8th day of April, 1942, and as such prisoner was permitted to be at large as a trusty of the Oklahoma State Penitentiary as aforesaid and permitted to be at large as a trusty did then and there unlawfully, wrongfully, willfully and feloniously escape from said Oklahoma State Penitentiary by then and there leaving said premises and absconding without the knowledge or consent of the Warden of the said Penitentiary or any of the officials or guards thereof; contrary to the form of the statutes, in such cases made and provided, against the peace and dignity of the State."

When arraigned, counsel for defendant, after taking time to plead, filed a demurrer to the information, which was as follows:

"Comes now O'Dell Perry, defendant in the above styled cause, by his attorney, H. I. Aston, and demurs to the information in said cause for the following reasons, to wit:

"1. That said information does not charge an offense under the laws of this state;

"2. That the offense charged in said information under Tit. 21, Paragraphs 443 and 443a of the Oklahoma Statutes of 1941 is contrary to law.

"3. That the act under which this information is based is unconstitutional, and contrary to the 14th Amendment of the Constitution of the United States of America."

The court overruled the demurrer and defendant refused to plead. Counsel representing defendant said:

"My theory is this, that after the demurrer is overruled and the defendant refuses to plead further, then the court passes judgment."

22 O. S. 1941 § 511. The court then, acting upon the suggestion of counsel and the case of People v. King, 28 Cal. 265, 266 (Book 9 P. States Rep.) construing a statute identical with the above statute, sentenced defendant to a term of two years in the State Penitentiary at McAlester. No question of this procedure is raised by defendant. From the judgment and sentence appeal has been perfected to this court. The assignments of error are the same as stated in the demurrer above quoted.

The statute under which defendant was charged is 21 O. S. 1941 § 443, which is as follows:

"Any prisoner in either the State Penitentiary or State Reformatory sentenced thereto who escapes from such prison, either while confined therein, or while permitted to be at large as a trusty, is punishable by imprisonment in such prison for a term not less than [two] (2) years or more than seven (7) years."

We desire to call attention to the history of this statute. Section 8361, C. O. S. 1921, fixed the punishment for escape, "by imprisonment in said prison for a term not exceeding double the term for which he was so sentenced, to commence from and after the expiration of his former sentence."

The Legislature in 1935, c. 15, art. 1, amended this section and fixed the punishment for escape at not to exceed five years, "to commence from the expiration of the original term of his imprisonment."

In 1939, c. 15, art. 1, the statute was again amended, and the punishment was fixed at "not less than (2) years [and not] more than seven (7) years, to commence from the expiration of the original term of his imprisonment."

In 1943, c. 12, it was again amended by striking from the 1939 act the clause, "to commence from the expiration of the original term of his imprisonment." 21 O. S. Supp. 1943 § 443.

In the case of State v. Johnsey, 46 Okla. Cr. 233, 287 P. 729, this court held section 8361, C. O. S. 1921, unconstitutional. Evidently the law as enacted by the Legislature in 1935, 1939, and 1943 was for the purpose of correcting the law of 1921, which the above case held was unconstitutional.

It is first contended that the information does not charge an offense against the defendant, by reason of the fact, it is alleged, that defendant "was permitted to be at large as a trusty of the Oklahoma State Penitentiary." It is argued that by reason of his being "at large, as a trusty," he could not be charged with escape.

To support this contention, the case of Ex parte Eley, 9 Okla. Cr. 76, 130 P. 821, is cited. A careful reading of this case discloses that the facts are in no wise similar to those in the instant case. It may be noted that the statute above quoted, when referring to an escape, uses the term "either while confined therein, or while permitted to be at large as a trusty, is punishable," etc. It was certainly the intention of the Legislature, by the enactment of this statute, to punish one who escapes while a "trusty" the same as if confined in the prison. To place any other construction upon this statute would result in the withdrawing of privileges from those who are confined of rights to which they are entitled by reason of their good conduct

while in prison. It would upset the whole prison system, and it is certain that the Legislature had no such intention in enacting the above statute.

In 19 Am. Jur. 361, an escape is defined:

"An escape has been broadly defined as the voluntary departure of a person without force from the lawful custody of an officer or from any place where he is lawfully confined, or as it is more tersely stated, the unlawful departure of a prisoner from the limits of his custody or the act of a prisoner in regaining his liberty before released in due course of law."

And on page 362:

". . . Thus, an escape may be committed where a prisoner who is permitted by a jailer to go at large on errands and to perform certain labors outside the prison walls fails to return to the prison." Citing: Annotations, 10 L. R. A. 148, and 50 L. R. A. 989. See also Jenks v. State, 63 Ark. 312, 39 S. W. 361; State v. Wright, 81 Vt. 281, 69 A. 761; Johnson v. State, 122 Ga. 172, 50 S. E. 65.

In the Jenks Case, supra [63 Ark 312, 39 S. W. 362], it is said:

"The question presented is whether the defendant is guilty of an escape, as described in the indictment. Our statute provides that 'if any convict shall escape, on conviction thereof, by indictment, he shall suffer such additional imprisonment as the jury before whom he may be tried shall direct, not less than five nor more than ten years.' Gould's Dig. p. 833, § 8. Although Jenks had been made a trusty, and was not confined in the walls of the penitentiary, or kept under guard, yet he was required to remain within certain bounds, to do work, and to obey prison rules. He was, in law, still a convict in custody, serving his term of imprisonment. When, therefore, he fled from the county and state, he committed the crime of escape, for the punishment of which the statute above referred to was passed. Riley v. State, 16 Conn. 47; 1 Russ. Crimes (8th Am. Ed.) p. 416; 2 Whart. Cr. Law, § 1678."

As to the sufficiency of the information, it will be noted that the charge is the same as the wording of the statute. It has often been held that this is sufficient as against a general demurrer. We are of the opinion that the allegations of the information are sufficient to inform the defendant of the crime with which he is charged, and that it is such as would be a bar to any action commenced in the future, involving this same offense. State of Kansas v. Clark, 121 Kan. 817, 250 P. 300, 50 A. L. R. 986.

It is further contended that the charge in the information is contrary to law for the reason that it violates the "due process" clause of the 14th Amendment to the Constitution of the United States of America, which reads:

"Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

And also art 2, § 21 of the Constitution of the State of Oklahoma, which is:

". . . Nor shall any person be twice put in jeopardy of life or liberty for the same offense."

This contention is based upon the fact that the Act of the 1943 Legislature, which enacted the statute above set out as Tit. 21 § 443, and upon which the charge in the information is based, also enacted section 443a, which reads as follows:

"In addition, all prisoners who escape from either of the aforesaid prisons either while confined therein, or while at large as a trusty, when apprehended and returned to the prison, shall be punishable by the prison authorities in such manner as may be prescribed by the rules and regulations of the prison provided that such punishment shall not be cruel or unusual."

It will be noted that this section provides that one who escapes, when apprehended and returned, shall be punished by the prison authorities "in such manner as may be prescribed by the rules and regulations of the prison," etc.

By reason of this provision it is contended that defendant was "twice put in jeopardy of life or liberty."

In the first place, section 443a of the statute, quoted above, is not involved in this case. There is nothing in the record which shows or implies that any punishment has been administered or attempted by the prison authorities against this defendant by reason of his escape. He was charged only with a violation of the first section. It is, therefore, unnecessary and would be improper to consider the constitutionality of section 443a. The provisions of this section and section 443 are in no way interdependent.

The Legislature, in adopting section 443a, may have had in mind that the rules and regulations of the prison provided that when one escaped his good time should be denied him, or that the right to again become a "trusty" would be taken from him. Not until the record reveals that a defendant has been punished and the manner of the punishment inflicted, would it be proper for this court to construe this statute, or to attempt to pass upon its constitutionality. The punishment attempted to be inflicted would be one of the controlling factors in passing on this question.

The contention of counsel that the case of State v. Johnsey, supra, in holding section 8361, C. O. S. 1921, unconstitutional was decisive of this case, cannot be sustained. That decision was based solely upon the question of the punishment inflicted by reason of its terms. The

Acts of the Legislature of 1935, 1939 and 1943 have amended this provision of the law, and the decision in the Johnsey Case would have no application here.

For the reasons above stated, the judgment and sentence of the district court of Pittsburg county is affirmed.

JONES, J., concurs.  DOYLE, J., not participating.