Garland Rex **BRINLEE, Jr.,** Appellant,

v.

**The STATE of Oklahoma,** Appellee.

No. F–74–722.

Court of Criminal Appeals of Oklahoma.

Dec. 3, 1975.

Rehearing Denied Jan. 5, 1976.

J. A. Allford, McAlester, and Garland Rex Brinlee, Jr., pro se, for appellant.

Larry Derryberry, Atty. Gen., Frank Muret, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Garland Rex Brinlee, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, McIntosh County, Case No. F-74-19, for the offense of Escape From the Oklahoma State Penitentiary, in violation of 21 O.S.1971, § 443. His punishment was fixed at a term of five (5) years' imprisonment, such sentence to begin at the termination of any sentence presently being served by defendant. From said judgment and sentence, a timely appeal has been perfected to this Court.

Briefly stated, the record reveals the following facts. On November 29, 1971, the defendant was committed to the Oklahoma State Penitentiary to serve a life sentence for the crime of Murder. Roby Battles, Assistant Record Clerk of the Oklahoma State Penitentiary, identified State's Exhibit No. 2 as a master record card kept on defendant. He testified that these cards are kept on each inmate in the ordinary course of penitentiary business. Said master card reflected that the defendant was

confined within the walls of the Oklahoma State Penitentiary during the month of July, 1973.

Park J. Anderson, Warden in charge of the Oklahoma State Penitentiary, testified that the inmates in the institution rioted on July 27, 1973. It took approximately one week to restore order within the institution. During this period he learned defendant was missing from the institution and he further stated that defendant was never given permission to leave the institution.

On August 4, 1973, Frank Hagerdorn, at that time the Director of the Oklahoma State Bureau of Investigation, testified that he supervised agents in an unsuccessful search to locate defendant. Pursuant to their continued investigation, they located the defendant at Gulfport, Mississippi, in the custody of law enforcement officials. On September 21, 1973, Hagerdorn and other agents in his company transported defendant to Jackson, Mississippi, for a Governor's Hearing on extradition to Oklahoma. On September 25, 1973, defendant was transported to McAlester, Oklahoma, by automobile. A *Jackson-Denno* hearing was held in which it was established that all conversations engaged in during the transport of defendant to the Oklahoma State Penitentiary were initiated by defendant and not in response to custodial interrogation. Summarily, the statements made by defendant revealed that defendant denied participation in the riot but described his method of escape.

Thereafter the State rested.

The State and defense entered into a stipulation regarding portions of the record and the defense rested.

We observe that both defense counsel and defendant pro se have submitted briefs. Therefore, we will consolidate by reference in each individual proposition those assignments of error which are duplicated. Further, the arguments regarding each assignment of error will be argued in the sequence of their occurrence at trial and will be referred to by defendant's pro se and defense counsel's assignments of error.

■ Defendant in his third pro se assignment of error urges that the information was insufficient as he was unable to determine which section of the statutes (21 O.S.1971, § 435 or § 443) he was alleged to have violated. With this contention we cannot agree.

We observe that the charging portion of the information reads as follows:

" . . . Garland Rex Brinlee, Jr., late of said County and within the jurisdiction of said Court, did unlawfully, wrongfully, and wilfully and feloniously, commit the crime of escaping from a state prison in the manner and form as follows, to-wit: that the said Garland Rex Brinlee, jr. was duly committed to the Oklahoma State Penitentiary from the District Court of Okmulgee County, Oklahoma, for a term of life for the crime of Murder; that a copy of said commitment is attached hereto, and marked 'Exhibit A' for identification; that thereupon the said Garland Rex Brinlee, Jr., became prisoner #83546 of said penitentiary, and did then and there, through the use of stealth and fraud, unlawfully and feloniously escape from said penitentiary by leaving said premises and absconding without the knowledge of the warden of said penitentiary or any of the officials or guards thereof, contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the state."

Title 21 O.S.1971, § 443, the statute in effect at the time defendant was tried, states as follows:

"Any prisoner in either the State Penitentiary or State Reformatory sentenced thereto who escapes from such prison, either while confined therein, or while permitted to be at large as a trusty, is punishable by imprisonment in such prison for a term not less than two (2) years or more than seven (7) years."

Title 21 O.S.1971, § 435, reads as follows:

"Every prisoner confined in any other than the penitentiary, who by force or fraud escapes therefrom, is punishable by imprisonment in the penitentiary not exceeding two years, or in a county jail not exceeding one year, to commence from the expiration of the original term of his imprisonment."

The above quoted language in the information unquestionably relates to Section 443 and is thoroughly distinguishable from an application to 21 O.S.1971, § 435, in that the information does not allege defendant was confined in or escaped from an institution other than the State Penitentiary as provided for in Section 435. We have on numerous occasions held that an information charging one with escape which follows substantially the language of the statute and states the offense clearly and distinctly in ordinary and concise language without repetition, and in such a manner as to enable a person of common understanding to know what is intended, will not, on demurrer, be held insufficient to charge an offense. See, *Perry v. State,* 80 Okl.Cr. 58, 157 P.2d 217 (1945).

Therefore we find this assignment of error to be without merit.

■ Defense counsel alleges in his third assignment of error that the trial court erred in denying defendant's objection to improper and insufficient observation and examination of defendant at the State hospital, which examination substantially failed to comply with the order of the court and the laws of Oklahoma for such examination. As stated in counsel's brief, the issue raised here is not whether the application for an examination should have been granted, because that was done and the District Court ordered that an examination be conducted pursuant to the authority granted by 22 O.S.1971, § 1171. The issue raised is the sufficiency of the examination purportedly conducted. Counsel complains that because it only took psychiatrists less than one day to conduct

their examination, combined with the fact that the defendant was under heavy guard at the time of the examination, said examination was merely a perfunctory one. In support of this contention he cites *Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969), which held:

"We are of the opinion that when insanity is interposed as a defense, and the trial court orders the defendant to be examined by experts, the conclusions of said experts are admissible in evidence when such conclusions are premised upon a sound and recognizable basis for making their determinations."

Counsel argues that due to the surrounding circumstances of the instant examination of defendant the conclusions of the psychiatrists were not premised upon a sound and recognizable basis.

However, after a careful review of the record before us, it does not appear that there is any evidence to support the assertion that the conclusions reached by the doctors were not based upon a sound and recognizable basis. Furthermore, the trial court, upon receipt of the State psychiatrists' report stating that the defendant was able to distinguish between right and wrong and was capable of advising an attorney in his own defense, acted properly under the statutory authority provided in 22 O.S.1971, § 1173. Accordingly, finding no abuse of discretion by the trial court, we find this assignment of error to be without merit.

■ Defendant pro se alleges in his first assignment of error that the trial court committed reversible error by overruling pretrial motions for a transcript of the preliminary hearing. In support of this contention the defendant cites the cases of *Roberts v. LaVallee,* 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967), and *Waters v. State,* Okl.Cr., 454 P.2d 325 (1969), which held that to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws.

With defendant's contention we cannot agree.

In the case of *Morgan v. Graham,* Okl. Cr., 497 P.2d 464 (1972), this Court held:

"We conclude, therefore, that while the indigent defendant cannot be required to carry the burden of 'particularized need,' neither the court nor the state can be criticized for taking appropriate steps to determine the value of such requested transcript in connection with the appeal or trial for which it is sought, and the availability of alternative devices.

"In short, an indigent defendant is not entitled to a free transcript as a matter of course, and certainly not where it is being sought as a matter of trial tactics for the purpose of delay.

"If the state can show a tape recording or some similar device will serve the same purpose at less cost, then it should be given the opportunity to so·show. This would also indicate that petitions in forma pauperis for free transcripts should be drafted with care and an eye to the circumstances of each case."

In arriving at this result this Court cited the following United States Supreme Court cases: *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), wherein the Court held that an indigent must be provided with a transcript when it is needed for effective defense or appeal, and that the issue is whether the trial court properly determined that a transcript was not needed in that case. The *Britt* decision outlines two factors which are relevant to the determination of needs: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought; and, (2) the availability of alternative devices that would fulfill the same functions as the transcript. On the same day in December the Supreme Court also decided *Mayer v. Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971), and held that a "record of sufficient completeness" does not translate automatically into a complete verbatim transcript and indicated that narrative state-

ments, agreed statements of facts, and other types of recordings can be used as suitable alternatives. The burden to show that an alternative will suffice is on the state.

▪ In the case at bar we observe the following from the transcript of motions heard on March 1, 1974, at pages 6 and 7:

"ALLFORD: All right, the next motion presented to me by Mr. Brinlee for filing is a motion to allow him to have a copy of the preliminary transcript in this case. This motion has been presented previously and if the Court will recall the ruling was that counsel for the defendant was directed to listen to the Court's tape recording of this preliminary hearing, and advise the Court if it is audible and if so, the motion would be denied. Counsel did listen to the entire tape recording and advised the Court that most of it was audible and there were only a few places, a word now and then where there was difficulty (sic) to understand or that might be misunderstood, but it was sufficient for presenting the demurrer and the motions that were then pending. However, defendant still desires and urges the Court to have a copy of the preliminary transcript for the purpose of use during the trial, and this motion was then overruled after consideration of the motion which was then pending. I don't believe that it was done at that time perhaps, I believe at that time Court advised counsel that the Court would then listen to the tape recording of the preliminary hearing before ruling on the pending motion. As I recall it, I am not certain that the Court advised me that he did listen to the recording and actually ruled on that demurrer and motion to dismiss."

And, we further observe on pages 8 through 10:

"ALLFORD: For the record may I state that the Court has not listened to that tape recording?

"COURT: Yes, sir, I have.

"ALLFORD: Oh, you have listened to it?

"COURT: Yes, sir.

"ALLFORD: All right.

"COURT: I can agree with you that it is not quite production quality. It would never sell in a recording studio, but passable.

"ALLFORD: Your Honor, I would like to pint (sic) out that additional reasons presented for asking for the transcript was for the purpose of cross-examination of the witnesses who did testify at that preliminary hearing, and as I mentioned to the Court previously it is the opinion of the defendant which is even stronger after I have listened to those tapes, that the evidence of the state was totally insufficient at the preliminary hearing; and further the witnesses show by their testimony at the preliminary hearing that they could not establish an affirmative case in favor of the state. Not only did they not at the preliminary but they could not later during the trial and for that reason we needed that testimony for the purposes of cross examination.

"COURT: I will make that tape available on your motion for use in cross examination.

"ALLFORD: All right, sir.

"COURT: You may endorse the person who was at that time the Action Court Reporter—Sandy Evans I believe, who is an employee of the Welfare Department and working on the first floor of the building. It will be very little trouble to get her subpoenaed. I will give you adequate time to prepare and I will assist you in getting it served, should it become necessary that she be called as a witness to prove those tapes. I will get the tape and the person who took them and/or her stenographic notes to aid you in your defense if you say you deem it necessary.

"ALLFORD: I do. We do, and I so move, without prejudice to my motion

for a written transcript, which would be preferable.

"COURT: All right, it will be the order of the Court that a subpoena duces tecum be issued for an instanter appearance of Mrs. Sandy Evans and to bring with her the transcription she took on the tape recorder, together with any and all stenographic notest (sic) of the preliminary hearing in F–73–195."

In light of the above, it becomes readily apparent that the defendant had available an informal alternative which appears to be substantially equivalent to a transcript. Accordingly, we cannot conclude that the court below was in error in rejecting his claim.

■ Defendant pro se next alleges in his second assignment of error that the trial court should have granted a change of venue on account of adverse pretrial publicity. In support of this contention defendant cites the Oklahoma case of *Scribner v. State,* 3 Okl.Cr. 601, 108 P. 422 (1910), which held, inter alia, that persons called as jurors who have heard and read detailed accounts of an alleged offense, from which they have formed such an opinion as to the guilt of the accused as will require evidence to remove, are not qualified jurors, although they believe and express their belief that they can and will fairly try the case upon the testimony produced. Further, defendant cites the case of *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), which held that the defendant in that case was denied due process of law under the Fourteenth Amendment because the jury in the state trial was not impartial. However, both of those cases are readily distinguishable from the case at bar in that certain jurors in both cases indicated that they had preconceived ideas of the defendant's guilt. Whereas, the jury in the instant case recited that they would determine the issues in the case based upon the law and the evidence and not the publicity they had been exposed to. This Court in *Shapard v. State,* Okl.Cr., 437 P.2d 565 (1967), adopt-

ed the language in *United States v. Hoffa,* 156 F.Supp. 495 (S.D.N.Y. Cir. 1957), which states as follows:

"The mere fact that there has been widespread adverse pre-trial publicity about the defendant does not, by itself, establish the reasonable probability that the defendant cannot obtain a fair and impartial jury at the criminal trial.

"The mere fact that prospective jurors have read newspaper or other publicity items critical of the defendant does not, by itself, establish bias, pre-judgment or other disqualification on the part of the prospective jurors.

"Where there has been widespread adverse pre-trial publicity about the defendant, the proper procedure in the vast majority of cases is not to postpone the trial indefinitely or for a substantial period of time, but to proceed to trial and to determine upon the *voir dire* of the panel and the individual talesmen whether a fair and impartial jury can be selected." (Emphasis original)

Therefore, in light of the above discussion combined with the fact that defendant had already been granted one change of venue prior to trial, we find this proposition to be without merit.

■ Defendant pro se alleges in his third assignment of error that the trial court erred in not arraigning him before the court in McIntosh County following a change of venue. Title 22 O.S.1971, § 451, reads as follows:

"When the indictment or information is filed, the defendant must be arraigned thereon before the court in which it is filed, if triable therein; if not, before the court to which it is removed or transmitted."

The record before this Court clearly reflects that defendant was arraigned before the District Court of Pittsburg County on November 6, 1973, and entered a plea of not guilty with his court appointed counsel, Mr. J. A. Allford, being present. It is the intent of Section 451 that in the event the arraignment had not been accomplished in the county wherein the information was filed then the arraignment must be accomplished in the county to which the case was removed. Therefore, this assignment of error is without merit.

■ Defense counsel alleges in his first assignment of error that it was error for the trial court to make certain statements to the jury panel before the case was called for trial and also during voir dire. He contends that such statements were improper and prejudicial to the defendant which necessarily prevented his receiving that fair and impartial trial contemplated by law. After a careful review of the record before us, in particular the numerous portions pointed out in counsel's brief, we cannot agree with his contention. The issue involved in this proposition is whether the remarks made by the trial judge coerced the jurors to sit on a panel on which they were not qualified to sit for the reason that they were unable to render a fair verdict. The record shows, following the comments by the judge, that the docket was called and in response to questions propounded by the trial court jurors Smith and Brogdon requested to be, and were, excused for cause. At this point the trial court responded with a comment to said jurors which counsel considered objectionable and coercive. However, the record supports the conclusion that the statements made by the trial judge during this stage of the proceedings did not have a coercive effect on the remaining jurors as following these statements 12 additional jurors requested to be, and were, excused by the trial court for cause. This Court has held that before remarks made by a trial judge made in the presence of a jury may be determined to be reversible error, a study of the entire record must reflect the jury was prejudiced by those remarks. See, *McMahan v. State,* 96 Okl.Cr. 176, 251 P.2d 204 (1952). The fact that the record shows 14 jurors excused themselves from service is ample to show that the final panel of jurors were not coerced into sitting

in a case where they could not fairly deliberate.

█ Defendant, pro se, alleges in his fourth assignment of error that testimony from an Oklahoma Bureau of Investigation agent relating to statements made by a third party were inadmissible and prejudiced him, thus, denying him a fair trial. The statements complained of are as follows:

"Q. Did you conduct an investigation at the penitentiary concerning the way that he did escape?

"A. My agents conducted that investigation, I did interrogate Patrick Allen Fleming, one of the men who escaped the penitentiary at the same time Mr. Brinlee did. We did look at the area where they had hidden, we did look at the area where the hole was cut in the fence and all of the reports the agents made were given to me, yes.

"Q. Then from your investigation, the means he described did correspond with what the investigation revealed?

"A. Thats true.

"MR. ALLFORD: Objection your Honor, that was called for a conclusion based on hearsay, based on what other people have told him and also what other people had told his agents which would be second hand to him.

"COURT: I understood it was based on what he saw himself, but if it is based upon what other people told him, it would be hearsay.

"A. Your Honor, we did have the information, I talked personally with Patrick Allen Fleming. We had the conversation with Rex Brinlee coming back from Mississippi to Oklahoma. I did go to the pentitentiary and look at the area. I didn't look at [it] in detail but my agents pointed it out to me. I did look at the fenced area where they were described. And on that basis I answered, yes it did coincide your Honor.

"MR. ALLFORD: We renew our objection and move that the answer be stricken because it includes references and basis of his conclusion on an interview with Patrick Allen Fleming, a 3rd party who is not testifying in the case. It is hearsay.

"COURT: The Jury will be instructed not to consider the part, if there is any, that is based on hearsay, based upon what other people said. Consider only what Mr. Hagerdorn says he himself saw, the cut fence and the lay of the land as described by Mr. Brinlee. With that exception, the motion is overruled, the objection, exceptions allowed." (Tr. 163–165)

We need only note that the trial court properly excluded and admonished the jury to disregard any hearsay evidence offered by this witness. Basically, the testimony of this witness concerned his observations and findings in the course of investigation of the alleged crime. After a careful review of the testimony of this witness, we find nothing so prejudicial that would require a reversal of the conviction. See, *McCormick v. State*, Okl.Cr., 464 P.2d 942 (1969). We are, therefore, of the opinion that this assignment of error is without merit.

█ Defendant, pro se, alleges in his fifth assignment of error that he was prejudiced by the trial judge's interrogation of witnesses and comments made by him when ruling upon certain objections. With this contention, we cannot agree. Upon a careful reading of the complained of comments, it becomes readily apparent that when put into the proper context the trial judge's comments were merely attempts to clarify the evidence. Furthermore, it does not appear that any objections were made either by defendant or counsel. See, *McCluskey v. State,* Okl.Cr., 372 P.2d 623 (1962). Accordingly, we find this assignment of error to be without merit.

█ Defense counsel alleges in his fourth assignment of error, also argued in defendant's pro se sixth assignment of error, that it was error for the trial court to allow the introduction of the master card,

a record kept by the Record Department of the Oklahoma State Penitentiary pertaining to the whereabouts of the defendant at any given time, as it was hearsay and prejudicial to the defendant. Counsel argues that this particular master card does not fall within the provisions of 12 O.S.1971, § 502, which provides for the admission of books and records required by law to be kept as a business records exception to the hearsay rule. Without reaching a determination of whether the master card in question is required by law to be kept, we, nevertheless, are of the opinion that the master card could have been admitted under the common law concept of the business records exception to the hearsay rule.

At common law, business records are sometimes admissible in evidence as an exception to the hearsay rule as such entries are frequently made at a time when there is no motive to misrepresent or to make false entries, and under such circumstances as to be of reliable character, and as they frequently form the only available evidence of the facts stated. The record of the instant case bears out that the above requirements were in fact met.

 Further, counsel and defendant, pro se, argue that the master card is the only evidence introduced by the State to show that the defendant was in fact in the prison at the time he was alleged to have escaped. Of course, it would be an essential element of the crime of escape for the State to show and prove that the defendant was in lawful custody. The record in the instant case bears out the fact that the defendant was confined to the State penitentiary to serve a term of life imprisonment for the crime of murder pursuant to a valid final judgment and sentence. Therefore, upon meeting this burden as the evidence indicates that the State did in the instant case, the question then becomes whether the defendant was legally discharged from serving this senence. The matter of a legal discharge, as applied to the facts of this case, is defensive in nature due to the fact defendant was incarcerated for life and the State need not show the absence of a legal discharge in order to establish the crime of escape. Accordingly, we find this proposition to be without merit.

Defendant, pro se, alleges in his seventh assignment of error that the trial court erred in failing to instruct upon the defense he raised in his requested instruction. That instruction reads as follows:

"You are instructed that the laws of the State of Oklahoma provide that if any prison, or any building thereof, shall be on fire, and the prisoners shall be exposed to danger by such fire, the keeper is authorized to remove such prisoners to a place of safety and to confine them is such place of safety so long as may be necessary to avoid such danger; if you should find from the evidence in this case that the prison, or any building thereof, was on fire and the prisoners then exposed to danger by such fire, and if you further find that the keeper failed or neglected to remove such prisoners to a place of safety to avoid such danger and if you further find that the defendant left the prison during such period of fire and resulting danger to himself, or should you entertain a reasonable doubt thereof you should give the defendant the benefit of such doubt and acquit him."

Defendant cites as authority for his requested instruction 57 O.S.1971, § 14, which provides:

"If any prison, or any building thereof, shall be on fire, and the prisoners shall be exposed to danger by such fire, the keeper may remove such prisoners to a place of safety, and there confine them, so long as may be necessary to avoid such danger, and such removal and confinement shall not be deemed an escape of such prisoners."

 We need only note that not only is this an obvious misstatment of the law relied upon, but neither the defense nor the State presented any evidence in support of

this instruction. There is no evidence whatsoever in the record that the defendant was removed by a keeper to a place of safety. Without the evidence affirmatively showing a basis for the giving of this instruction, the jury is not entitled to consider this purported defense. See, *McBirney v. City of Tulsa,* Okl.Cr., 505 P.2d 1403 (1973). Accordingly, we find this proposition to be without merit.

■ In defense counsel's second assignment of error as well as defendant's pro se eighth assignment of error, it is alleged that the trial court erred in submitting a supplemental jury instruction which allowed the jury to vest with the trial court the power to assess the term of defendant's sentence. The pertinent portion of the record found at pages 231 through 233 of the trial transcript reads as follows:

"WHEREUPON, Jury returns to Courtroom with question at 3:45 p. m.

"COURT: Are you satisfied your Jury is all here, are you satisfied?

"MR. ALLFORD: Yes.

"COURT: Mr. Foreman, I have a note here that you wrote and handed to the bailiff to hand to the Court, it reads: 'If we find the defendant guilty, do we fix time and punishment?' Is that the question?

"FOREMAN: Yes sir.

"COURT: I can answer that if you have found him guilty first. If you determine upon a verdict of guilty then I am permitted to answer your question.

"FOREMAN: We have.

"COURT: Alright then, I will give you this additional instruction, to take to the Jury with you, 'Supplemental Instruction', You are instructed to deliberate further to attempt to arrive at a verdict, but if you then fail to agree, after sincere and diligent effort you may so state in your verdict and leave the punishment to be assessed by the Court.' If you wish I will draw up a verdict to that effect, or if you had rather just take one

of the, the one that is there says find him guilty and fix his punishment, you can add there, fixes punishment, left to the Court, punishment to be fixed by the Court. If you will hand this Supplemental Instruction to the Jury Mr. Bailiff then you can retire, I believe you can take that verdict, but meanwhile to play safe, we will be typing up one. I will hand it to the bailiff, knock on the door and pass it on to you. Does that answer your question Mr. Foreman in full? Thank you.

"MR. ALLFORD: May we have objection and exceptions to that instruction?

"COURT: Sure. But that is the edict of the Court of Criminal Appeals in the Shanahan case.

"MR. ALLFORD: Our objection is based on the Court going beyond the proper comments and statements and instruction as set forth in the Shanahan case."

In substance, counsel argues that the manner in which the trial court conducted the submission of the supplemental instruction regarding the ability of the jury to leave the punishment to the court did not comply with this Court's holding in *Shanahan v. State,* Okl.Cr., 354 P.2d 780 (1960). However, after a careful review of the complained of portions of the record we cannot agree with this contention. We held in *Shanahan,* supra, that:

"Sec. 927 of Title 22, supra, would not be applicable and would not apply until after the jury had retired to deliberate and reached a verdict of guilty. Then, and in that event, after diligent and sincere efforts, they are unable to agree upon the punishment and so report to the trial judge, then Sec. 927, Title 22, supra, becomes applicable and the court shall require the jury to deliberate further after giving the additional instruction that if they then fail to agree they may so state in their verdict and leave the punishment to be assessed by the

court. This procedure was approved by this court in the case of *Snider v. State,* 71 Okl.Cr. 98, 108 P.2d 552, and we hereby adopt said procedure as that to be followed by the trial courts in all cases where defendant makes his request as provided for in Sec. 926, Title 22, supra."

Therefore, in light of the holding in *Shanahan,* supra, and the procedure followed by the trial court in the instant case, we find that the trial court substantially complied with the holding in *Shanahan,* supra, and we find this assignment of error to be without merit.

■ Defense counsel alleges in his fifth assignment of error that the verdict and judgment are not supported by sufficient competent evidence. In support of this contention he cites the case of *Turner v. State,* Okl.Cr., 477 P.2d 76 (1970), which held in the third paragraph of the Syllabus as follows:

"While it is well settled that this Court will not reverse a conviction for insufficiency of the evidence, if there is any substantial evidence, although circumstantial, from which a reasonable and logical inference of guilt arises, the converse rule is also well settled, that it is not only the province but the duty of the Court to set aside such a verdict when it is contrary to law and the evidence, or where there is no evidence to support it, or there is a failure to prove some essential matter to establish the offense charged, or where it appears that the verdict was rendered as a result of passion or prejudice. The performance of this duty on the part of the Court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of inno-

cence to which every one is entitled who is put on trial for an offense."

With this contention we cannot agree. After a careful examination of the entire record and especially in light of the uncontroverted proof of a circumstantial case of escape put on by the State, we feel there was competent evidence upon which the jury found the defendant guilty. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See, *Jones v. State,* Okl.Cr., 468 P. 2d 805 (1970).

■ Defendant, pro se, asserts in his final assignment of error that the case must be reversed because the accumulation of errors, when considered as a whole, deprived him of a fair and impartial trial. In *Haney v. State,* Okl.Cr., 503 P.2d 909 (1972), this Court held that if the previous assignments of error are without merit, it follows that the proposition which asks that the previous propositions be considered collectively would also be without merit. In the instant case, since we have found all of the assignments of error to be without merit, it follows that this assignment is similarly without merit. See, *Glover v. State,* Okl.Cr., 524 P.2d 51 (1974).

For the above and foregoing reasons the judgment and sentence appealed from is *affirmed.*

BUSSEY and BLISS, JJ., concur.