Helena Kay SARTIN, and Leona Irene Pigeon, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–80–158, F–80–159.

Court of Criminal Appeals of Oklahoma.

Dec. 3, 1981.

Gary Peterson, Deputy Appellate Public Defender, Norman, for appellants.

Jan Eric Cartwright, Atty. Gen., Mary Bryce Leader, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellants, Helena Kay Sartin and Leona Irene Pigeon, were charged with

Murder in the First Degree and convicted of Manslaughter in the First Degree, in the District Court of Tulsa County, Case No. CRF–79–731, with punishment set at fifteen (15) years for Sartin and sixty (60) years for Pigeon, and they appeal.

On March 13, 1979, three (3) persons were seen entering the residence of Orville F. Parks, age 73, located at 1035 East Haskell in Tulsa. Several neighbors testified that they heard what sounded like a gunshot, and shortly thereafter, they observed three (3) individuals exit the premises in great haste. The appellants, Helena Kay Sartin and Leona Irene Pigeon, were positively identified at trial as being two (2) of the three (3) persons who fled the scene.

The stipulated testimony of Dr. Hemphill, of the Oklahoma State Medical Examiner's Office, was that Mr. Parks had died as a result of a single bullet wound to the chest, which was compatible with a wound made by a .38 caliber slug.

The victim's telephone had been ripped from its place on the wall during the incident, and taken by the trio.

R.W., a fifteen (15) year old transvestite, recanted a written statement that he had previously given to police, in which he had confessed to having shot Mr. Parks, stating that he had made the statement only because appellant Pigeon had told him to make it, since he was a juvenile and, as such, could not be convicted of a crime. At trial, he testified that he and appellant Sartin were passengers in a car driven by the appellant Leona Pigeon, on the afternoon of March 13, 1979, when she stopped at 1035 East Haskell, in Tulsa, to use a telephone to get assistance in fixing her automobile. All three (3) entered the house, and as Pigeon picked up the phone Sartin said: "Don't Leona. He's got a gun." R.W. testified that he took the gun from Mr. Parks' back pocket and, upon her request, handed it to Pigeon. Pigeon demanded money from the victim, who took some from his billfold and gave it to her. She responded by ordering him to look into his desk drawers for more money. R.W. stated that Pigeon marched Parks into an adjacent room and that he

heard a gunshot. The trio headed for the door in haste and appellant Sartin ripped the telephone from the wall because it had fingerprints on it. Later, the murder weapon, the telephone and a coat worn by R.W. were thrown away.

Appellant Pigeon testified substantially as R.W. except she maintained that no robbery occurred, and that R.W. was the person who shot Mr. Parks.

### I.

As their first assignment of error the appellants allege that the district court's *Allen* charge unlawfully coerced the verdicts of the jury. The *Allen* instruction was given after the jury had deliberated for approximately four (4) hours and was deadlocked eleven (11) to one (1). "Allen instructions have previously been upheld by this Court under circumstances of an apparent deadlocked jury. However, the trial court must carefully avoid any coercion." See, *Day v. State*, 620 P.2d 1318 (Okl.Cr. 1980); and, *Glaze v. State*, 565 P.2d 710 (Okl.Cr.1977). In the present case the court, in its instruction, emphasized twice that "... [N]o juror should surrender his conscientious convictions; and a verdict arrived at and to which a juror agrees must be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusions of other jurors." (OR 74) The *Allen* instruction was proper and not coercive; therefore, this assignment of error is without merit.

### II.

In their second and third assignments of error the appellants complain of instructions given by the trial court. However, the record reveals that the instructions now complained of were not objected to, nor were requested instructions submitted on these matters; thus, they are not properly preserved for review. As this Court stated in *Holloway v. State*, 550 P.2d 1352 (Okl.Cr.1976):

We have consistently held that where defense counsel is not satisfied with the

instructions that are to be given, or desires the trial court to give a particular instruction, or to more definitely or sufficiently state any proposition embraced within the proposed instructions of the trial court, it is the duty of defense counsel to prepare and present to the trial court such desired instructions and to request that they be given. In the absence of such request, this Court will not reverse the case if the instructions generally cover the subject matter of the inquiry. (Citations omitted)

These assignments of error are without merit.

### III.

■ As their fourth assignment of error the appellants rely upon *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979), and allege that evidence of other crimes was introduced at trial which denied them a fair trial. In the questioning of R.W. by the prosecutor, who was seeking to establish that the felony of robbery occurred during the murder of Mr. Parks,[1] the following colloquy took place:

MR. BAKER: Was there any more discussion about money on the trip to Arkansas?

R. W.: Well, Leona said we had to break into a house because we needed more money and her and Sue—

MR. MEFFORD: I'll object to this as being highly prejudicial, not having anything to do with the case.

THE COURT: Will counsel—

MR. BAKER: Don't tell us about another—let me rephrase my question.

MR. MEFFORD: Ask that the Court admonish the jury to disregard the voluntary statement of counsel.

MR. BAKER: I'll withdraw the question.

The record itself negates the assertion that the prosecutor purposely introduced evidence of another crime; he was obviously as surprised as anyone else when the wit-ness blurted out his statement. Therefore, this situation is distinguishable from the purposeful introduction of evidence of "other crimes" that was condemned in *Burks*, supra, and the argument is meritless.

■ Further, the appellants complain of the introduction of unrelated occurrences at the victim's residence on the day preceding the shooting. In the context of the record we simply do not find that the evidence complained of was evidence of the appellants' involvement in other crimes. See, *Young v. State*, 551 P.2d 1133 (Okl.Cr.1976). This assignment of error is without merit.

### IV.

■ The appellant Sartin, singularly, asserts that there was insufficient evidence to support her conviction. The evidence presented against Sartin was that she entered the victim's home with Pigeon, warned Pigeon that the victim had a gun, and yanked the telephone from the wall as she departed the dwelling. Further, there was evidence of Sartin's subsequent flight, and both R.W. and Pigeon testified to her disposal of the telephone and the gun. In addition, bullets from the gun were found in her purse. Only slight participation is required to change a person's status from a mere spectator into an aider and abetter. *Cooper v. State*, 584 P.2d 234 (Okl.Cr.1978). We find that there was ample evidence to support the verdict of the jury as to the appellant Sartin; and, as we have stated on numerous occasions:

Where, as here there is competent evidence in the record from which the jury could reasonably conclude that the appellant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, because it is the exclusive province of the jury to weigh the evidence and determine the facts.

See, *Morris v. State*, 607 P.2d 1187 (Okl.Cr. 1980). This assignment of error is without merit.

---

1. The record reflects that twelve thousand ($12,000.00) dollars in cash was found in the victim's desk, and R.W. later testified that Pigeon had related that the victim had more mon-ey. Thus, it is readily apparent that the prosecutor was seeking to establish robbery as a motive.

### V.

The appellant Pigeon, asserts that there was insufficient evidence of "heat of passion" to sustain her conviction of first degree manslaughter. However, it has long been held by this Court that:

> The general rule is that in a prosecution for murder, when the court submits the issue and the jury finds a defendant guilty of first degree manslaughter, although under the law and the facts the crime is murder, yet if the defendant is convicted of a lesser degree of homicide than that shown by the evidence, no prejudice could have resulted to him since the error is in his favor.

*Jackson v. State*, 84 Okl.Cr. 138, 179 P.2d 924 (1947). Therefore, this assignment of error is without merit.

For the above and foregoing reasons the judgments and sentences appealed from are hereby AFFIRMED.

BRETT, P. J., concurs in results.

CORNISH, J., concurs.