Kirk Warren McBRAIN, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–690.

Court of Criminal Appeals of Oklahoma.

Sept. 27, 1988.

Scott W. Braden, Ponca City, for appellant.

Robert H. Henry, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

BUSSEY, Judge:

The appellant, Kirk Warren McBrain, was convicted on February 14, 1986, in the District Court of Noble County, Case No. CRF–85–06 of the crimes of Kidnapping, First Degree Rape (two counts) and Sodomy. Appellant was sentenced to eight (8) years imprisonment on the Kidnapping charge, ten (10) years imprisonment on each of the Rape counts (each count to run concurrently) and ten (10) years imprisonment on the Sodomy charge. From this sentence he appeals.

On the evening of March 23, 1984, Kirk McBrain, Donald Honeycutt and Mark Loveall grabbed fourteen-year-old R.A. as she was walking along a Ponca City street and forced her into McBrain's car. While McBrain drove, Honeycutt grabbed and threw a screaming R.A. into the front seat. The victim was placed in the front seat between McBrain and Honeycutt until they arrived at Lake Ponca. Honeycutt then ordered R.A. to take off her clothes, he slapped her and got into the backseat where he raped her. Then Loveall raped her. Finally, McBrain who had been in the driver's seat forced the victim to orally sodomize him. The appellant stated he didn't want to rape her because he thought she had a venereal disease. While appellant was in the backseat with the victim, Honeycutt began driving the car.

Shortly thereafter a Ponca City police officer, noticing erratic driving, stopped the vehicle and asked the three men for identification. The officer observed that Loveall did not have his pants on and that McBrain was not wearing underwear. The officer

arrested Honeycutt for driving under the influence. He then arrested the appellant and Loveall for public intoxication. R.A. remained in the car until the officer had arrested and detained the three men. The officer noted that R.A.'s face and hair were covered with axle grease. He described her demeanor as "controlled hysteria".

A detective from the Ponca City police department arrived and interviewed the victim at the scene. She recounted the rapes by Honeycutt and Loveall and said that the appellant had put his finger in her vagina. The victim was then taken to the hospital where personnel administered a rape test.

On March 25, 1984, the detective took a taped statement from appellant where he admitted orally sodomizing R.A. Thereafter, the detective interviewed R.A. and she acknowledged that appellant had made her orally sodomize him.

On March 26, 1984, an Information was filed in Kay County against the appellant and the two other co-defendants. Appellant's preliminary hearing was held on July 26, 1984, and he was bound over for trial.

During Thanksgiving week 1984, the victim disappeared and was found dead. Police arrested appellant and charged him with murder. On New Year's Eve 1984, appellant escaped from the Kay County jail and was not recaptured until nine months later.

Prior to his escape the district judge in Kay County granted a change of venue to Noble County. Prior to trial, on January 22, 1985, and February 10, 1986, the appellant presented motions for change of venue from Noble County. The court denied the motions and the jury trial began on February 10, 1986.

## I

■ As his first assignment of error the appellant asserts that his conviction under 21 O.S.1981, § 886 is unconstitutional. We reject this assignment of error. We have repeatedly held that this statute is constitutional. *Hicks v. State*, 713 P.2d 18 (Okl.Cr. 1986); *Glass v. State*, 701 P.2d 765 (Okl.Cr. 1985); *Golden v. State*, 695 P.2d 6 (Okl.Cr.

1985); *Clayton v. State*, 695 P.2d 3 (Okl. Cr.1984). *See* also *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).

The appellant cites *Post v. State*, 715 P.2d 1105 (Okl.Cr.1986) to support his contention. However, *Post, supra*, declared unconstitutional the application of 21 O.S. 1981, § 886 to consensual acts between adults.

We stress that our decision today in no way affects the validity of 21 O.S.1981, § 886 in its application to bestiality, forced sexual activity, sexual activity of the underaged, or public or commercial sexual acts.

*Post, supra*, at 1109.

■ The appellant additionally asserts in his first contention that he should have been allowed an instruction on consent. The evidence does not support such an instruction nor is one necessarily required as 21 O.S.1981, § 886 covers acts of consensual sodomy committed with a child. *See Post, supra*. We therefore find this assignment without merit.

## II

In his second assignment the appellant contends that the trial court erred by denying his motion for a change of venue from Noble County. A change of venue had already been granted from Kay County to Noble County. We find that the trial court did not abuse its discretion in denying the second change of venue. The trial court acknowledged the extensive publicity given the case. However, the court felt that a change of venue was not warranted as an impartial panel could be selected in Noble County.

■ We have held consistently that a granting of a change of venue is within the discretion of the trial court and that we will not disturb the denial of a motion for change of venue unless there has been an abuse. *Plunkett v. State*, 719 P.2d 834 (Okl.Cr.1986); *Wooldridge v. State*, 659 P.2d 943 (Okl.Cr.1983); *Frye v. State*, 606 P.2d 599 (Okl.Cr.1980). Whether the defendant was provided with a fair and im-

partial jury is the determinative inquiry into whether the trial court abused its discretion in denying the motion for change of venue. *Plunkett, supra; Wooldridge, supra; Andrews v. State,* 555 P.2d 1079 (Okl. Cr.1976); *Brinlee v. State,* 543 P.2d 744 (Okl.Cr.1975).

■ In the instant case the trial court conducted an extensive individual voir dire of forty-four prospective jurors. The trial court, defense counsel and prosecutor probed into the effect of the media on the veniremen. Of the forty-four prospects, twelve were excused for cause. The remaining prospective jurors were again questioned on the media coverage surrounding the victim's death. Each juror stated that he or she could disregard any opinions formed from the media and render a verdict based on the evidence presented at trial. This extensive voir dire protected the appellant from the taint of community prejudice. *Stafford v. State,* 731 P.2d 1372 (Okl.Cr.1987).

There was no indication of inflamed community sentiment or juror impropriety during the course of the trial to counter the jurors' impartiality. *See Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). There is nothing in the record to show that the appellant did not receive a fair and impartial trial. *Brinlee, supra.*

### III

■ In his third assignment of error the appellant contends that he was improperly convicted of Rape in the First Degree. We find that there was sufficient evidence to conclude that the appellant aided and abetted in the commission of the crimes.

The appellant argues that he was present when the rapes occurred yet did not actively participate, thus he should not have been convicted of First Degree Rape. However, the jury reasonably concluded from the evidence that the appellant acted as a principal. Where there is evidence to support the verdict, we will not disturb the jury's findings since it is the exclusive province of the jury to weigh the evidence and determine the facts. *Smith v. State,* 640 P.2d 988 (Okl.Cr.1982), *Morris v. State,* 607 P.2d 1187 (Okl.Cr.1980).

The evidence at trial revealed that appellant was the owner of the car and driving it when he, Honeycutt and Loveall abducted R.A. Prior to the abduction, the men discussed finding some girls. Honeycutt had talked to some girls who escaped from him and shortly thereafter he grabbed R.A. She was then forced to sit between appellant and Honeycutt. While R.A. screamed and asked to stop the car, appellant drove to the location where the victim was raped and forced to commit oral sodomy. Appellant watched while Honeycutt and Loveall raped R.A. When it was the appellant's turn, he made the victim orally sodomize him. He did not have intercourse with her since he believed she had a veneral disease. During the course of this sordid occurrence, the three men used false names in addressing one another.

■ Aiding and abetting requires acts, words or gestures encouraging the commission of the offense. *Van Woundenberg v. State,* 720 P.2d 328 (Okl.Cr.1986) *cert. denied* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395; *Rounds v. State,* 679 P.2d 283 (Okl. Cr.1984); *Hindman v. State,* 647 P.2d 456 (Okl.Cr.1982). The appellant's status as an aider and abettor in the commission of the acts of rape were substantiated by his driving the car, observing the acts of rape without trying to impede their commission, and finally in requiring R.A. to orally sodomize him. In a similar fact situation this Court said that:

> All the evidence in the case and the circumstances therewith strongly indicate that the defendant knew what was going to take place when he assisted in getting the girls away from town and out to the Sledge farmhouse without their consent, and after they had begged him to take them home.

*Elliott v. State,* 45 Okl.Cr. 5, 281 P. 305, 310 (1929). Appellant asserts that there is no indication that he participated in the acts of rape. We find otherwise and further note that only slight participation is

needed to change a person's status from mere spectator into an aider and abettor. *Smith v. State,* 640 P.2d 988 (Okl.Cr.1982); *Sartin v. State,* 637 P.2d 897 (Okl.Cr.1981). For the above reasons we find this assignment of error without merit.

## IV

In his next assignment of error the appellant asserts that the evidence is insufficient to prove him guilty beyond a reasonable doubt of kidnapping, two counts of rape and of sodomy. There was ample evidence presented at trial to convict the appellant on all the crimes.

This assertion has been addressed in the previous assignment of error and furthermore, we would observe that the appellant held the keys to the car and could have prevented the occurrence of the crimes at any time.

## V

■ In his last assignment of error, the appellant contends that since his participation was minimal the sentences imposed are unconscionable. This Court has consistently stated that we do not have the power to modify a sentence unless we can say that the sentence is so excessive as to shock the conscience of the Court. *Clark v. State,* 678 P.2d 1191 (Okl.Cr.1984); *Edwards v. State,* 645 P.2d 528 (Okl.Cr.1982); *Dilworth v. State,* 611 P.2d 256 (Okl.Cr. 1980). The evidence of the appellant's participation in the two acts of rape and kidnapping was more than minimal. The sentences were within the statutory limits and considering the evidence of appellant's guilt we cannot say that the sentences imposed shock the conscience of this Court.

BRETT, P.J., concurs.

PARKS, J., specially concurs.

PARKS, Judge, Specially Concurring:

I write separately to address appellant's third assignment of error. In this proposition, appellant argues that there was insufficient evidence to conclude that he aided in the commission of the kidnapping and rapes of R.A.

Focusing first on the evidence of appellant's actions during the kidnapping, it is clear that appellant's vehicle was used during the abduction and that appellant was driving. Appellant concedes that he knew R.A. was forced into the vehicle and did not go willingly. He also admits she was kicking and screaming and begged him to let her go. Obviously, he was a participant and not merely a bystander in the kidnapping of R.A. As such, there was sufficient evidence from which a jury could find him guilty of this offense.

Centering next on the evidence presented with regard to the two rape convictions, the State agrees that appellant did not actually commit an act of sexual intercourse with R.A. However, if appellant encouraged or advised by words, acts or gestures, either before or at the time of the offense, he will be treated as a principal to the crime. *VanWoundenberg v. State,* 720 P.2d 328, 333 (Okla.Crim.App.1986). It is therefore important to consider appellant's actions both before and during the commission of the rapes. Again, appellant facilitated the commission of the rapes by driving his vehicle to an isolated area after the kidnapping of R.A. The evidence reveals that appellant was not told by Loveall or Honeycutt to go to an isolated area. He made this decision on his own. Further, the three men agreed to use false names in order to make identification more difficult. Appellant participated in this scheme by calling the other men "John" and "Chester" and by answering to the name of "Jake". When they arrived at the lake, testimony shows that all three men exited the vehicle and switched seats in order to facilitate each man while he "took his turn" with R.A. Although conflicting evidence was presented, there is testimony to support the fact that appellant threatened physical harm to R.A. if she did not cooperate.

After considering the sequence of events, I must agree that there was sufficient evidence to show that appellant's gestures, words, and actions facilitated in the rapes of R.A. *See Rounds v. State,* 679 P.2d 283, 286 (Okla.Crim.App.1984); *Smith*

*v. State*, 640 P.2d 988, 989 (Okla.Crim.App. 1982). Accordingly, I must concur.