Larry Bruce **HICKS**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17427.

Court of Criminal Appeals of Oklahoma.

Nov. 8, 1972.

244

Robert T. Keel, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant, Larry Bruce Hicks, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma for the offense of Assault and Battery With a Deadly Weapon With Intent to Kill; his punishment was fixed at fifteen (15) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Co-defendant James Robert Stephens testified that he was currently on a seven (7) year suspended sentence, having pled guilty to five (5) burglaries of automobiles. That, on the evening of July 13, 1971, he was at Mother's Tavern in Oklahoma City. He left with Flavel Moore, John Dutton, Larry Hicks, Rosemary, and Flora Mae Woodward, in Tom-

my Price's car. At approximately 2:00 a. m., they pulled into the parking lot of the Fun Club, near 6th and Walnut. They all got out of the car and John Dutton, urinated in the parking lot. He and Dutton argued about what Dutton had done in front of the girls. They went into the tavern and stayed approximately fifteen minutes and then went back to the parking lot. He and Dutton continued "about half arguing about what had happened." Flavel Moore "popped off something" and he told Moore, "it would be best if he'd shut up." Moore pushed him and Dutton swung at him, missing. Dutton and Moore then ran down the alley. He ran after them and the defendant followed. Flavel Moore slipped and he (Stephens) grabbed hold of his shirt and started hitting him in the back with his fists. The defendant ran in front of Moore and joined in the fracas. He testified that he saw something in the defendant's hand but he did not know what it was. Dutton came back up the alley and threw a rock at them, striking the defendant in the head. One of the girls screamed and they got back into Price's car and went to a Fina Service Station at 3rd and Pennsylvania, where they washed the blood off the defendant's face. They subsequently returned to the area to pick up his jacket and were arrested by the police.

Dr. Dombeck testified that he examined Flavel Moore at about 2:30 a. m. on July 14, 1971 in the emergency room at St. Anthony Hospital. Moore was in a state of shock, which was produced by low blood volume. He had a laceration across his neck and a puncture wound in the third intercostal space, just to the right of the breast bone, slashes on his right chest and a cut on the back of his right hand. He was given six pints of blood in the emergency room. He was removed to the operating room and while getting him prepared for surgery, his heart stopped. He immediately opened the chest and massaged the heart by hand. After approximately two minutes, his heart started to beat and they were able to continue the surgery. He testified that Moore was in a critical condi-

tion when he arrived at the emergency room and would have died, without the surgery.

Officer Lippee testified that about 1:15 a. m., he observed Flavel Moore, lying on the sidewalk at 7th and North Broadway. He had a conversation with John Dutton and obtained descriptions of the assailants, which he radioed to headquarters.

Officer Timmons testified that on the morning in question he received a description of five subjects in a 1971 Maverick or Pinto. He subsequently observed the car in the 700 block of North Walnut. He asked the three male subjects to get out of the vehicle, searched them and placed them in back of the scout car. He found a pocket knife, which appeared to be bloody, on the defendant.

John Dutton testified that he was at Mother's Saloone with Flavel Moore on July 14, 1971. They left the tavern at approximately 12:00 with the defendant, Stephens, the two girls, and Tommy Price. He testified that he had not known either defendant or Stephens prior to that evening. They went to a couple of bars and eventually ended up at the Fun Club. He stepped to the back of the car, used the bathroom and then they all went into the club. Upon leaving the club, they started talking about him going to the bathroom. Stephens pushed Flavel and started getting ready to fight him. He swung at Stephens and missed. He told Flavel, "let's run," because they were outnumbered. They ran through the parking lot and as they were cutting up the alley, Flavel slipped. The defendant and Stephens caught Flavel as he fell, the defendant being in front and Stephens to his rear. He testified that it was fairly dark and that he could not see anything in the defendant's hands. He got a rock, came back and threw it, striking the defendant. The defendant and Stephens ran back toward the car and Flavel ran down the alley. They ran to 7th and Broadway, where Flavel couldn't run anymore. He did not know that Flavel had

been cut until they were running down the alley.

Flavel Moore's testimony as to what occurred prior to arriving at the Fun Club did not differ substantially from the testimony of Dutton. Upon leaving the Fun Club, the defendant started talking to Dutton. Stephens pushed him (Moore) and Dutton swung at Stephens. Dutton said, "lets go" and they took off running because he didn't want to fight. He slipped in the alley and Stephens and the defendant caught him. Stephens was in the back hitting him on the head. The defendant was in front of him and he felt burning pains on his chest, neck and side. He testified that he knew he was stabbed, but didn't know how badly it was. He testified that it was the defendant rather than Stephens who stabbed him. The defendant jumped back and he got up and ran. After running approximately four blocks, he fell down and couldn't get up. He testified that he did not have any type of weapon on the evening in question.

For the defense, Flora Mae Woodward testified that Dutton and Moore were already at Mother's Club when she arrived. She testified that Moore was drinking pretty heavily. They all left together and rode around awhile before going to the Fun Club. As they were getting out of the car, Dutton used the restroom. They went inside the club, and left shortly thereafter. Defendant and Stephens tried to get Dutton and Flavel to apologize to the girls and they refused. Dutton swung at Stephens and Flavel pushed him. Dutton and Flavel then took off running down the alley. The defendant and Stephens ran after them. Flavel fell to the ground and because of the darkness, she could not see what exactly happened. She testified that "it didn't look like they were fighting though." (Tr. 169). Someone threw something and the defendant came back to the car with his head cut.

The defendant testified that upon arriving at the Fun Club, Dutton used the restroom in front of the girls. They went into

the Fun Club and had a beer before leaving. Stephens, Dutton, and Moore, started arguing with each other. Moore pushed Stephens and Dutton swung at him. Stephens started running and Moore and Dutton chased him. He testified that "I didn't think that was fair, two against one, so I took off after them." (Tr. 188). Stephens fell to the ground and they jumped on him. Someone hit him and he fell to the ground. He started wrestling around with somebody on the ground. He got up and attempted to help Flavel Moore up, when he noticed a knife in Moore's hand. He took it from his hand, and Moore jumped up and started running. Dutton threw a rock, which struck him in the forehead.

In rebuttal, Billy Boy Knight testified that he observed defendant and James Stephens at a Fina Service Station at 3rd and Penn on the day in question. The defendant stated, "I stabbed a dude." (Tr. 230). On cross-examination, he testified that he was convicted with Jame Stephens on the "five counts of burglary."

■■ The first proposition asserts that the court erred "in not allowing certain offers of proof by the defendant on rebuttal after allowing the State to offer rebuttal." The record reflects that after the court read the instructions to the jury, the defendant's attorney stated, "the defendant makes a motion to allow a rebuttal witness to be presented which was overruled and the defendant excepts to that ruling." (Tr. 246). The record does not reflect what witness the defendant proposed to call in surrebuttal nor does it reflect the facts to which the witness would testify. Absent such offer of proof this Court can not conclude that the trial court abused its discretion in refusing to allow the witness to testify. We have previously held that the admission of rebuttal evidence is largely a matter addressed to the sound discretion of the trial court, whose ruling thereon will not be reversed in absence of a showing of a manifest abuse of discretion. Walters v. State, Okl.Cr., 403 P.2d 267. We therefore find this proposition to be without merit.

■ The second proposition contends that the trial court erred in refusing to give defendant's instructions relating to this theory of the case on simple assault and battery and self-defense. We are of the opinion that the trial court properly declined the defendant's requested instructions. The defendant's theory of defense was not that of self-defense but rather that he did not stab the victim. We therefore find this proposition without merit.

■ The final proposition asserts that the court erred in failing to sustain an objection to the admissibility of the knife. The defendant argues that the State .did not prove that the knife, taken from the defendant was the knife used in the stabbing. In Richmond v. State, Okl.Cr., 456 P.2d 897, we stated in the fifth syllabi:

"It is not necessary that such identification should positively and indisputably describe and relate to such evidence. If a question of fact as to the connection of the article sought to be admitted with the defendant or the crime is raised, the evidence should be admitted for the determination of the jury. The lack of positive identification in such a case affects the weight of the article or substance as evidence, rather than its admissibility."

The judgment and sentence is affirmed.

BRETT, J., concurs.