Linda HOLDER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–421.

Court of Criminal Appeals of Oklahoma.

Nov. 22, 1976.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Linda Holder, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Kay County, Case No. CRF–75–40, for the offense of Injury of Minor Child, in violation of 21 O.S. 1971, § 843. Her punishment was fixed at five (5) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Officer Ray Dodson testified that on February 11, 1975, he proceeded to an address in Ponca City, Oklahoma to assist an ambulance call. He entered the residence and observed a young baby lying on a couch. The baby had bruises on its chest and face and did not appear to be breathing. The ambulance attendant gave the baby mouth-to-mouth resuscitation and the baby was taken to the hospital.

Dr. James Littel testified that he examined an injured child on the evening of February 11, 1975. The child was not breathing and had signs of increased pressure in the head area. He observed bruises about the chest and face. He removed fluid from the skull of the baby to remove pressure from the brain. The baby was transferred to St. Anthony's Hospital in Oklahoma City.

Dr. Glenn Schoenhals testified that he was a neurosurgical resident at St. Anthony's Hospital; that he received a call from Dr. Littel in Ponca City concerning the baby, James Holder. The baby was transferred to St. Anthony's and he observed that the baby was not breathing normally and appeared to have pressure on the brain stem structures. After stabilizing the baby's condition, he had a conversation with the defendant who stated that she had dropped the child. He later had a further conversation with the defendant and in response to a question as to whether or not

Shears & Shears by Jack Shears, Jr., Ponca City, for appellant.

she had beaten the child, the defendant affirmatively nodded her head. X-rays reflected a temporal skull fracture to the baby's head; the fracture could have been only caused by trauma. The baby, at the time of trial, was in a vegetative state with prognosis for recovery "absolutely nil." He testified that in his opinion the injuries to the child could not have been caused by a fall from the defendant's arms.

Dr. Stanley Polosky a neurosurgeon, testified that he observed James Holder at St. Anthony's Hospital; that from his observations he was of the opinion that the baby was a battered child in the medical sense. He further testified that in his opinion it would be quite unlikely that the injuries could have been sustained by a fall from its mother's arms.

Betty Lavoy testified that she was the Director of Social Services at St. Anthony's Hospital; that on February 12, 1975, she had a conversation with the defendant at the hospital. The defendant stated that after having an argument with her husband she threw the baby into the bed and it struck the wall. Defendant further stated that she had struck the baby on a previous occasion.

Glenda Fay Golay testified that on February 11, 1975, she was a neighbor of the defendant. She identified a picture of James Holder taken around February 1, 1975, which showed bruises on the baby's head.

Joyce Martin testified that she was the defendant's babysitter for approximately three weeks before the child was injured; that she observed bruises on the baby's forehead which would fade away and then come back fresh. The defendant had told her that the baby had bumped his head on the baby bed.

Detective Raymond Ham testified that he had a conversation with the defendant at approximately 6:30 a. m. on February 12, 1975. He advised the defendant of her *Miranda* rights, which she affirmatively waived. Defendant made both a verbal and written statement. Defendant stated

that she became upset because she thought her husband was seeing another woman. The baby began crying and she struck the baby on the head and chest area; she picked up the child and threw him into the baby bed; the baby struck his head and appeared to stop breathing; she grabbed the child, ran down the stairs and called an ambulance. She stated that on five other occasions she had struck the child hard enough to cause bruises, but she loved the child and only struck him when she became upset with her husband.

For the defense, Flora Bell Lusk testified that the defendant had a good reputation for truth and veracity in the community.

Defendant testified that on February 11, 1975, she was separated from her husband; that her husband came for dinner and left without giving a proper explanation; that the baby started crying and she "just started in hitting him." She tossed him into the bed and the baby stopped moving and started making funny noises. She grabbed him and ran down the stairs to get help. She testified that it was not her intention to hurt the child when she struck him.

Wanda Lou Morgan, defendant's mother, testified as to the marital problems between defendant and her husband; that defendant become despondent concerning her husband's relationship with another woman. She further testified that the defendant loved the child and she had never seen defendant abuse it.

■ Defendant first asserts that the evidence presented at her Preliminary Hearing was insufficient under the law to justify the Magistrate's ruling binding her over for jury trial. She argues that the corpus delicti was not established by proof other than by a confession. We disagree. Glenna Golay testified that she babysat James Holder prior to February 11, 1975; that she observed bruises on his face and bottom; that the baby was four months old and could not crawl or turn himself over. Dr. Littel testified that he examined James Holder in the emergency room of the hos-

pital on the evening in question; that the baby was unconscious and appeared to have increased pressure inside his head. He observed bruises over the chest and head areas; he received a history of the baby falling; in his opinion the bruises appeared older than the reported history. We are of the opinion that such evidence, although circumstantial, was sufficient to establish the corpus delicti of injury of a minor child. Detective Ham's testimony concerning defendant's confession was, therefore, properly admitted.

■ Defendant secondly contends that the statute under which she was charged and convicted is unconstitutionally vague. She argues that the statute is not sufficiently clear in nature to enable one charged with a violation to truly understand the precise nature of the charges he is confronted with and, therefore, violates the due process rights and equal protection. We again disagree. The provisions of 21 O.S.1971, § 843, are as follows:

> "Any parent or other person who shall willfully or maliciously beat or injure, torture, maim, or use unreasonable force upon a child under the age of seventeen (17), or who shall cause, procure or permit any of said acts to be done, shall be punished by imprisonment in the state penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year, or by a fine of not more than Five Hundred Dollars ($500.-00), or both such fine and imprisonment."

We are of the opinion that the statute is sufficiently clear and explicit that all persons of ordinary intelligence could understand its provisions. A person of common intelligence would not necessarily guess at its meaning and differ as to its application. See, *Lock v. Falkenstine*, Okl.Cr., 380 P.2d 278 (1963). We, therefore, find this assignment of error to be without merit.

■ Defendant next asserts that the trial court erred in allowing the introduction of an excessive amount of incompe-

tent, irrelevant and immaterial evidence. We have carefully examined each error complained of and find that the evidence was either properly admitted or that the admission of the same did not materially prejudice defendant's right to a fair and impartial trial. See, *Robinson v. State*, Okl.Cr., 507 P.2d 1296. We, therefore, find this assignment of error to be without merit.

Defendant contends, in her fourth assignment of error, that the trial court erred in failing to give her two requested instructions. In her brief, she states: "The first of these instructions requested that the trial court instruct the jury on the lesser included offense of Assault and Battery. The second instruction related to the defense of lack of criminal intent and set forth the elements of the charge of Injury of Minor Child." We are of the opinion that the trial court properly denied defendant's requested instructions.

We are of the opinion that the trial court did not err in refusing to give the defendant's first requested instruction. The statute under which the defendant was convicted, 21 O.S.1971, § 843, reads as follows:

> "Any parent or other person who shall willfully or maliciously beat or injure, torture, maim, or use unreasonable force upon a child under the age of seventeen (17), or who shall cause, procure or permit any of said acts to be done, shall be punished by imprisonment in the state penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year, or by a fine of not more than Five Hundred Dollars ($500.00), or both such fine and imprisonment."

The battery provision, 21 O.S.1971, § 642, which the defendant contends serves as a predicate for the lesser included offense instruction, reads thus:

> "A battery is any wilful and unlawful use of force or violence upon the person of another."

Virtually, especially under the circumstances of the instant case, the proof necessary to sustain a conviction under one statute would likewise sustain a conviction under the other, with the exception of an additional element in Section 843. That element being the burden of the State to demonstrate, under Section 843, that the victim was under the age of seventeen. It is obvious that the legislature intended to create a special provision punishing more severely those persons who are guilty of battering children. Section 843 is a specific provision, punishing offenders for up to five years imprisonment, whereas Section 642 is a more general provision, punishing offenders a maximum of 30 days in jail or One Hundred Dollars fine or both. And, the common law rules of construction dictate that the more specific of the two applicable provisions be utilized in a given situation. This Court has clearly followed this rule in the cases of *Maloney v. State,* Okl.Cr., 532 P.2d 78 (1975); *Abbott v. State,* Okl.Cr., 434 P.2d 957 (1967) and, *Lovins v. State,* 49 Okl.Cr. 200, 293 P. 273 (1930). In a case such as the one before us the objective of the legislature, in creating a special battery provision, would be thwarted if offenders were convicted under the more general provision when their conduct and the age of their victim fell within the provisions of the more specific statute. There being no question as to the age of the child being less than seventeen years, the trial court was correct in refusing to instruct the jury under Section 642.

We next observe that the elements of the offense set forth in defendant's requested instruction No. 2 are sufficiently covered by the court's instruction No. 3, which sets forth the provisions of 21 O.S. 1971, § 843. See, *Smith v. State,* 94 Okl. Cr. 87, 231 P.2d 371 (1951).

Defendant asserts, in her fifth assignment of error, that she did not receive a fair trial because one of the jurors who sat in her case was unable to hear the testimony of the witnesses or the comments of the trial judge. The record reflects that the juror, W. D. Padgett, stated in the voir dire examination of a subsequent case, that he had difficulty hearing the evidence in the instant case on several occasions. We need only observe that this contention was raised by the defendant in her Motion for New Trial. The trial court, after hearing arguments, overruled the contention. In *Parish v. State,* 77 Okl.Cr. 436, 142 P.2d 642 (1943), this Court stated, in the third paragraph of the Syllabus:

"It is a matter within the sound discretion of the trial court to award a new trial where it is shown in hearing on motion for new trial that one of jurors was disqualified by reason of being afflicted with a bodily infirmity amounting to a disability."

The voir dire examination reflects that the juror, W. D. Padgett, answered each and every question propounded to him without apparent difficulty in hearing. The record further reflects that when the jury was polled, at the conclusion of the case, the court asked the juror:

"BY THE COURT: Mr. Padgett, you have heard the verdict read in open court; is that your verdict?

"BY MR. PADGETT: Yes, Your Honor." (Tr. 264)

Under such circumstances we cannot conscientiously say that the trial court abused its discretion absent a more definitive showing by defendant that the juror was disqualified by reason of an infirmity amounting to a disability.

Defendant lastly asserts that the trial court abused its discretion in refusing to grant her request for a deferred or suspended sentence. Defendant argues that the trial judge's primary motive for denying the request was that defendant had demanded a jury trial. The record does not support defendant's contention, but rather reflects that the trial court carefully considered the arguments of both the defendant and the State, prior to ruling on defendant's Motion. The trial court further considered theories of deterrence, rehabili-

**1054**

tation and improvement of the criminal judicial system. Under such circumstances we cannot hold that the trial court abused its discretion in refusing to grant defendant a deferred or suspended sentence.

In conclusion, we observe the record is free of any error which would justify modification or reversal. The judgment and sentence is accordingly *affirmed*. Defendant's attention is called to the provisions of 22 O.S.1971, § 994, which provides for a further application for suspension of sentence after appeal.

BRETT, P. J., and BLISS, J., concur.