James NAUM, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-80-38.

Court of Criminal Appeals of Oklahoma.

June 24, 1981.

John Michael Johnston, Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., William S. Flanagan, Asst. Atty. Gen., Thomas L. Spencer, Legal Intern, State of Oklahoma, Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, James Naum, was charged with Murder in the Second Degree in Tulsa County District Court Case No. CRF–78–144, but he was convicted of Manslaughter in the First Degree and sentenced to twenty (20) years' imprisonment. A timely appeal has been perfected to this Court.

The evidence at trial established that the body of appellant's estranged wife, Marie, was found in her west-side Tulsa apartment on January 17, 1978. An autopsy revealed that the cause of death was either strangulation or heart failure due to pressure applied to nerves in the victim's neck. The time of death was placed at sometime between the afternoon of Saturday, January 14, 1978, and Sunday, January 15. A neighbor of appellant at an east-side Tulsa trailer court testified that the appellant had been upset when his wife moved out with the couple's three children, and in December, 1977, stated that his wife would return by Christmas or be dead. The neighbor also testified that on the morning of Saturday, January 14, 1978, appellant serviced and packed his car as if preparing for a trip, then left for a short time, and returned with his wife and children. The witness last saw them as they drove away about 3:00 p. m. that afternoon.

A neighbor of the victim testified that she saw appellant in the parking lot of the apartment complex where victim resided on Saturday, January 14, and saw the victim pick up her mail that day. The witness went to visit the victim the next day, Sunday, January 15, and failed to receive a response when she knocked on the door.

A man in jail with appellant after his arrest testified that, on one occasion, appellant broke down and cried, stating that he had gotten into an argument with his wife and choked her, and, before he knew it, she was dead.

Appellant interposed a defense of insanity. He testified in his own behalf and admitted visiting his wife on Saturday, January 14, and choking her. He stated that she looked dead when he released her.

A psychiatrist testified for the defense that appellant was a paranoid schizophrenic and not capable of knowing right from wrong when he killed his wife. In rebuttal, the State offered the testimony of a psychiatrist who testified that appellant was not schizophrenic, though possibly paranoid, and in the doctor's opinion, knew right from wrong at the time of the slaying.

Appellant contends as his first assignment of error that the "religious," and "attorney-client" privileges were violated by admission of the minister's testimony concerning his phone conversation with appellant on January 17, 1978. The minister received the phone call just hours before the victim's body was discovered. The minister was in charge of his church's day care program, and the Naum children participated in the program. The minister had counseled with the Naums concerning their marriage on one occasion, although he never knew appellant to have attended his church. Appellant asked the witness to send Christmas presents and winter clothes purchased by the church for the children to New York, where appellant and the children were living. He then tearfully asked the minister if he had heard about Marie. When the minister responded in the negative, appellant said Marie was dead. The clergyman asked if appellant had killed her, and appellant said he had. Appellant then asked the minister to inform a named Tulsa attorney that he was returning the next day to turn himself in.

■ We are of the opinion that appellant's clergyman-communicant privilege was not violated by the reverend's testimony. One of the prerequisites of the privilege is that the communication be "confidential," i. e., privately made and not intended for further disclosure except for persons present in furtherance of the purpose of the communication.[1] In this case the communication was not confidential in the required sense because it was expressly intended for disclosure to the lawyer, a third person not present in furtherance of the purpose of the communication. See generally, Annotation: Matters to Which the Privilege Covering Communications to Clergyman or Spiritual Advisor Extends, 71 A.L.R.3d 808 and 827, §§ 6 and 15.

■ Appellant's second contention in this regard, that the attorney-client privilege was violated by the testimony, is without merit. It is grounded on the argument that the minister became appellant's representative within Laws 1978, ch. 285, § 502, now 12 O.S.Supp.1980, § 2502(A)(4), therefore giving rise to the privilege stated in 12 O.S.Supp.1980, § 2502(B)(4). Section 2502(A)(4) provides as follows:

A "representative of the client" is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client.

The question presented is the authority of the purported representative, or "agent." See McKinney, Commentary: Privileges, 32 Okl.L.Rev., 307, 313. Under the circumstances presented here, it does not appear

1. Laws 1978, ch. 285, § 505, now 12 O.S.Supp. 1980, § 2505(A)(2), provides as follows:

A communication is "confidential" if made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.

that the minister was authorized or undertook to employ legal counsel for appellant, nor was he empowered to act for appellant upon any advice rendered by counsel. His first assignment of error is without merit.

■ Appellant contends as his second assignment of error that he was denied his constitutional right under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), to conduct his own defense. The record reflects that after the prospective jurors were passed for cause by both sides at voir dire, appellant asked that his appointed counsel be dismissed and that he be allowed to represent himself, which request was denied by the trial court.

Present formulations of the right include the requirement that the request be timely and unequivocal. The question has been phrased as one of determining whether "meaningful trial proceedings have commenced." See *United States v. Lawrence*, 605 F.2d 1321, (4th Cir. 1979), and *Coleman v. State*, (Specially Concurring Opinion of Cornish, P.J.) 617 P.2d 243, 247 (Okl.Cr. 1980). In *Lawrence*, a request was held not timely where all that remained was to swear the jury, and accused had appeared in court for over a year without expressing a desire to proceed pro se. In *Coleman*, a request was held to be timely where asserted prior to jury selection.

The record indicates that as early as August 18, 1978, appellant began complaining to the court about representation by the Public Defender's Office and insisting on appointment of outside "street" counsel. However, in a letter to the court just prior to trial, the appellant stated that he had at no time agreed to defend himself. We are of the opinion that meaningful trial proceedings were well under way when appellant first sought to assert his right, and the trial court did not abuse its discretion in denying the appellant's request.

■ Appellant contends as his third assignment of error that the trial court erred in admitting into evidence photographs of the victim's body. He also contends that the trial court erred in barring opinion testimony by lay witnesses as to the gruesome character and likely prejudicial effect of the photos on a jury. However, it does not appear that appellant has included the photographs in the record on appeal. Consequently, this assignment of error is not properly before the court. See *Baker v. State*, 593 P.2d 100 (Okl.Cr.1978).

■ Appellant contends as his fourth assignment of error that the trial court erred in refusing to permit surrebuttal psychological testimony by the defense. The admission of rebuttal evidence is committed to the discretion of the trial court, whose ruling will not be reversed absent manifest abuse. See *Schneider v. State*, 538 P.2d 1088 (Okl.Cr.1975), and *Hicks v. State*, 503 P.2d 243 (Okl.Cr.1972). We are of the opinion that the trial court did not abuse its discretion. The evidence was not offered until after both sides had rested. The surrebuttal witness did not possess an opinion as to appellant's sanity at the time of the crime and did not examine appellant. The proffered testimony did not directly rebut Dr. Tyler's conclusion for the State that appellant was not schizophrenic, but instead suggested that a conclusion on the issue should not be drawn on the basis of the tests used. This should be viewed against Dr. Tyler's testimony that his opinion was not based solely on the tests, but primarily on clinical observations. The offered testimony tended to be cumulative and threatened serious jury confusion when added to the lengthy and rather technical prior testimony of Dr. Gagliano for the defense and Dr. Tyler for the State. This assignment of error is without merit.

■ Appellant complains as his final assignment of error of remarks by the two prosecutors during closing arguments. The first statement complained of appears in the record as follows:

Marie Naum is not here to testify. She is in the grave, this mother, this wife, this Brazilian lady whom none of us have got to know. She can't come in here and tell us what happened.

However, this remark was supported by the record and was not of such a nature to have

improperly influenced the verdict or punishment. He next complains of the following remark:

Do you know what, under Dr. Gagliano's testimony, would result here, you know, in the heat of passion a person gets mad and does an act eminently dangerous to another, which results in taking that life? It would probably excuse 90% of the domestic homicides committed in this county.

A defense objection to this remark was sustained by the trial court and the jury was admonished to disregard it. We are of the opinion that any error was thus cured. See *Kitchens v. State*, 513 P.2d 1300 (Okl. Cr.1973)..

█ Appellant finally complains that one of the prosecutors injected his personal opinion as to the truth or falsity of psychiatric testimony when he made the following remarks:

As I sat here and listened to both attorneys talk, I have listened with my mind to words with regarding the pros and cons of psychiatric testimony and it seems like there has been removed from this courtroom the fact that we are dealing in this courtroom with the death of a human being, not the word games of one psychiatrist versus another and I daresay that if there had been six more presented, you would have got six more divergent views because that is how inexact that 'science' is with regard to what? It has its place in our society—

In closing argument, both counsel for the defense and the State have the right to discuss fully from their standpoints the evidence and possible inferences therefrom. Only where argument by the State is grossly improper and unwarranted on some point which may affect the accused's rights is reversal justified. See *Frazier v. State*, 607 P.2d 709 (Okl.Cr.1980). In this case, the State's psychiatrist gave testimony which arguably supports the complained of remarks. At any rate, we are of the opinion that the remarks are not such as to have affected appellant's rights. This contention is not well taken, and the final assignment of error is without merit.

There appearing no error in the record which would justify modification or reversal, the judgment and sentence appealed from is AFFIRMED.

BRETT, P. J., and CORNISH, J., concur.