David WOOLDRIDGE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–108.

Court of Criminal Appeals of Oklahoma.

Feb. 15, 1983.

As Corrected Feb. 18, and Feb. 28, 1983.

---

**16.** See supra note 11.

Patti Palmer, Deputy Appellate Public Defender, Robert M. Beck, Special Counsel, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Appellant was convicted of Rape in the First Degree in the District Court of Beaver County, and sentenced to forty-five (45) years' imprisonment.

Uncontroverted evidence at trial revealed that the eleven year old victim and her eight year old brother spent the night with the appellant and his wife on March 31, 1980. Appellant, his wife and the children's

mother had agreed that the children could stay at the Wooldridge house that night because the mother had to inventory a convenience store, which she managed. Appellant's wife had kept the children on at least one prior occasion. The children left with appellant for the Wooldridge house at approximately 9:00 p.m.

The victim testified at trial that Wooldridge, with the assistance of his wife, raped her sometime between 11:30 p.m. or 12:00 p.m. and 4:00 a.m. on April 1, 1980. Later on that morning the victim advised two of her friends at school of what had happened. Her friends informed one of her teachers, who contacted the principal of the school. Subsequently, the Beaver police department and the victim's mother were contacted, and the victim was taken to the Beaver Hospital emergency room for examination.

The victim's mother testified that when the children left their home with Wooldridge on the evening of March 31, 1980, the victim had no bruises or marks on her. She did not see her daughter again until she arrived at the school the next morning. She stated that at that time she observed bruises on her daughter's neck and face and a cut on her left lip.

Dr. Ed L. Calhoon, the examining physician, testified that he examined the victim and noted bruises and abrasions of the body, shoulders, neck and mouth and contusions and hematoma of the pelvic area. He stated that it was his opinion that the child had been molested and had most likely suffered penetration of the vagina. A subsequent analysis by the Oklahoma State Bureau of Investigation revealed that sperm was identified from the vaginal washings and smears taken from the victim during the rape examination.

Appellant, testifying in his own behalf, denied that he had harmed or raped the victim during her stay at his house.

I

Wooldridge first urges that the failure of the trial court to sustain his motion for change of venue was error. At the hearing on the motion, appellant presented evidence in support of his contention that because of the rumor and gossip in Beaver County he could not obtain a fair and impartial jury. Testimony revealed that four hundred Beaver County residents had signed a petition expressing that they wanted a town where they could feel safe from anyone who might harm their little girls. The petition did not express any opinion as to appellant's guilt or innocence. The witness who testified in regard to the petition stated that she thought Wooldridge could receive a fair and impartial trial in Beaver County. The petition was not presented at the hearing, nor has it been included in the record on appeal. Another witness stated that he had contacted twelve people in regard to a juvenile certification study concerning Wooldridge's wife. The witness expressed his opinion that, out of 3,312 registered voters in Beaver County, Wooldridge could receive a fair and impartial trial.

Finally, the appellant presented testimony from a graduate student in social psychology at Oklahoma State University regarding a study of jurors' attitudes in Beaver County, prepared at the appellant's request. Stated briefly, of a random sample of the previous term's jury pool list, 55% of those surveyed said they had formed an opinion as to Wooldridge's guilt or innocence; of that 55%, 35% stated they thought appellant was guilty. However, when asked if they could be fair and impartial jurors, 60% of those surveyed said they could. The remaining 40% stated that they were not sure whether they could. Finally, 50% of the persons surveyed thought Wooldridge could receive a fair trial. The conductor of the survey concluded that while most people will respond with a socially acceptable answer in a publicly expressed opinion, they may still harbor private attitudes and opinions regarding the guilt or innocence of a defendant.

█ This idea is not unknown in the history of the jury system. However, the question is not whether a juror has formed a preconceived notion or opinion prior to

trial, but whether that juror finally empaneled has expressed affirmatively a willingness to lay aside these impressions and render a verdict based solely upon the evidence presented in court. *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Wacoche v. State,* 644 P.2d 568 (Okl.Cr. 1982); *Frye v. State,* 606 P.2d 599 (Okl.Cr. 1980); *Shapard v. State,* 437 P.2d 565 (Okl. Cr.1967). In *Anderson v. State,* 551 P.2d 1155 (Okl.Cr.1976), this Court stated that a criminal defendant is not entitled to a jury of persons entirely ignorant of the facts surrounding the case, nor is such a jury necessary to protect the right to the presumption of innocence. 22 O.S.1981, § 662 provides in pertinent part:

> No person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him. . . .

■ Furthermore, the granting or denial of a change of venue is within the sound discretion of the trial court, whose ruling will not be disturbed absent an abuse thereof. *Frye v. State,* supra; *Thomsen v. State,* 582 P.2d 829 (Okl.Cr.1978). Whether an abuse has occurred depends upon whether the defendant was prevented from receiving a fair trial by an impartial jury. *Anderson v. State,* supra. In the instant case, the trial judge held a hearing on appellant's motion for change of venue and afterwards overruled it, reserving the right to reconsider it if jury selection became difficult. The court questioned the prospective jurors extensively during voir dire. All persons who had signed the petition were removed from the jury panel. Those persons who said they could not put aside their opinions and follow the evidence and the law were removed by the court. Each member of the finally empaneled jury stated that they could lay aside what they had heard, if anything, and render a verdict

based on the evidence and the law presented to them at trial. The trial transcript contains over 135 pages of voir dire, wherein counsel for both sides were given wide latitude in examining prospective jurors. Accordingly, we find that the trial court did not abuse its discretion in overruling appellant's motion for change of venue.

## II

■ Appellant's second assignment is that the trial court committed reversible error in admitting the testimony of Beaver Police Chief Gary Morrison concerning statements made to him by the victim, as being consistent with the victim's testimony at trial. However, a reading of the transcript reveals that although the prosecutor asked him whether the victim had told the same story she told at trial, and that appellant's objection to this question was overruled, the witness never responded to it. The other testimony about which appellant complains consisted of Chief Morrison's statement of what he had asked the victim, not of what the victim had told him. This assignment of error is without merit.

## III

■ Appellant's third proposition is that the trial court's failure to sustain his *motion in limine* concerning acts of oral sodomy was error because the State failed to follow the procedures outlined in *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979). *Burks,* supra, explicitly excepts from its requirements of notice those other criminal acts which are a part of the *res gestae* of the crime charged. We agree with appellant's contention that rape and oral sodomy are separate and distinct crimes and may be prosecuted separately. However, in the instant case the sodomy was a part of a series of continuing sexual offenses and was admissible as part of the res gestae of the rape. We find *Hawkes v. State,* 644 P.2d 111 (Okl.Cr.1982), and *Wade v. State,* 556 P.2d 275 (Okl.Cr. 1976), to be dispositive of this issue.

## IV

Appellant's fourth proposition of error is that the rebuttal testimony of the victim's eight year old brother should not have been allowed as he was not endorsed as a witness upon the information. Appellant also asserts that it was error for the trial court to refuse to grant his requested continuance to interview the witness.

■ The admission of testimony in rebuttal is a matter within the sound discretion of the trial court and will not be grounds for reversal absent an abuse thereof. *Mills v. State,* 594 P.2d 374 (Okl.Cr.1979); *Schneider v. State,* 538 P.2d 1088 (Okl.Cr. 1975). The endorsement of a rebuttal witness on the information is not required if the testimony is clearly in rebuttal. *Martin v. State,* 596 P.2d 899 (Okl.Cr.1979); *Boydston v. State,* 79 Okl.Cr. 172, 152 P.2d 701 (1944). However, if an unendorsed witness' testimony will require a defendant to produce additional evidence or other rebuttal witnesses, the defendant is entitled to a continuance of sufficient time to prepare to defend against the rebuttal testimony. *Griffin v. State,* 490 P.2d 1387 (Okl.Cr. 1971); *Grant v. State,* 385 P.2d 925 (Okl.Cr. 1963).

Rebuttal testimony may be offered to explain, repel, disprove, or contradict facts given in evidence by an adverse party, regardless of whether such evidence might have been introduced in the case in chief and regardless of whether the testimony is somewhat cumulative. *Schneider v. State, supra.* Here, the testimony of the victim's brother, who was present in the Wooldridge house on the night of the attack, directly contradicted the testimony of the appellant and his wife that the brother did not get up during the night after going to bed and that they did not speak to him until the next morning. Further, appellant was not required to produce any additional testimony or witnesses on account of the rebuttal testimony, since it went directly to statements already made by the appellant and his wife. There was no abuse of discretion in allowing the rebuttal testimony.

## V

■ Appellant's fifth allegation is that Instruction Number 6 erroneously failed to include that the crime must have been found to have occurred in Beaver County. He argues that it was reversible error for the trial court to give the instruction over appellant's objection and motion for directed verdict. We would first note that appellant failed to offer any such instruction in his own behalf. *Jetton v. State,* 632 P.2d 432 (Okl.Cr.1981); *Wells v. State,* 559 P.2d 445 (Okl.Cr.1977). This Court is convinced that the form of Instruction Number 6, under the facts of this case, did not in any way constitute a substantial violation of appellant's rights. *Oliver v. State,* 568 P.2d 1327 (Okl.Cr.1977). In fact, Instruction Number 1 restated the charging portion of the information, which included the allegation that the crime had occurred in Beaver County. Further, Instruction Number 2 charged that the State had the burden of proving the material allegations of the information beyond a reasonable doubt before the jury would be justified in returning a verdict of guilty. No one instruction states all the applicable law, therefore, the instructions must be considered as a whole and not one to the exclusion of the others. *Williams v. State,* 478 P.2d 359 (Okl.Cr. 1970). The instructions were complete and accurate statements of the law. The trial court was not in error in refusing to give repetitive instructions that the crime was to have occurred in Beaver County. *Fish v. State,* 505 P.2d 490 (Okl.Cr.1973), citing *York v. State,* 449 P.2d 927 (Okl.Cr.1969). This proposition of error is without merit.

## VI

■ Appellant's sixth assignment of error complains of various instances of alleged prosecutorial misconduct. We find that the deliberate attempt on the part of the prosecutor to examine appellant concerning the time actually served on his prior felony convictions, coupled with the following statement during closing argument,

... If you really want David Wooldridge's attention give him 1,599 years.

**948**

It doesn't mean he's going to serve that much.

amounted to improper comment upon the possibility of parole. *McKee v. State,* 576 P.2d 302 (Okl.Cr.1978); *Bell v. State,* 381 P.2d 167 (Okl.Cr.1963). This Court has held that such references to the parole system are grossly prejudicial to an accused and can serve no useful purpose beyond that of educating the jury as to the often disproportionate ratio between the sentence rendered and the time actually served. *Jones v. State,* 554 P.2d 830 (Okl.Cr.1976); *Evans v. State,* 541 P.2d 269 (Okl.Cr.1975). When combined with the prosecutor's analogyzing the appellant to Charles Manson and the Candy Man in closing argument, we cannot say beyond a reasonable doubt that the jury was not unduly prejudiced in its sentencing of appellant. Accordingly, we would modify appellant's sentence from forty-five (45) years' imprisonment to thirty (30) years' imprisonment.

THEREFORE, and in accordance with this decision, appellant's conviction is AFFIRMED as MODIFIED.

BRETT, J., concurs.

BUSSEY, P.J., concurs in results.