**Windel Ray WORKMAN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–87–411.**

Court of Criminal Appeals of Oklahoma.

Dec. 31, 1991.

Rehearing Denied Feb. 26, 1992.

Matt Dowling, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma and Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

Windel Ray Workman, appellant, was tried by jury for the crime of Murder in the First Degree in the District Court of Oklahoma County, Case No. CRF–87–254. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at death. The trial court sentenced the appellant in accordance with the jury's verdict. From this Judgment and Sentence, appellant appeals to this Court.

At about 10:30 a.m. on January 10, 1987, the appellant and his live-in girlfriend, Rebecca Holman, brought twenty-eight month old Amanda Holman, Rebecca's daughter, to South Community Hospital. Amanda had been left with the appellant at his home in Oklahoma City the two days preceding her death. At trial, a forensic pathologist testified that Amanda had been severely beaten, and that as a result, she developed a subdural hemorrhage which led to her death. The emergency room physician also testified that Amanda was a victim of the battered child syndrome.

The appellant testified that during the last two days, Amanda had fallen three times; once off her bed hitting a dresser, then out of the bathtub, and finally off the bed again, this time hitting her head on the floor.

After both sides had exhausted all peremptory challenges, but prior to the jury being sworn, prospective Juror Simmons reported to the trial court that she had viewed a report concerning the case on the television that morning. Juror Simmons expressed her belief that her ability to be impartial had been impaired. Appellant asserts that the trial court erred in not excusing Juror Simmons for cause.

Whether or not a juror is able to serve in an objective, unbiased manner, as required by law, is necessarily an inquiry within the discretion of the trial court, which will not be disturbed unless an abuse is evident. *Sherrick v. State*, 725 P.2d 1278, 1282 (Okl.Cr.1986). The question is not whether a juror has formed a preconceived notion or opinion prior to trial, but

whether that juror has expressed affirmatively a willingness to lay aside these impressions and render a verdict based solely on the evidence presented in court. *Wooldridge v. State*, 659 P.2d 943, 945 (Okl.Cr. 1983). *See also, Smith v. State*, 656 P.2d 277 (Okl.Cr.1982).

◼ We have examined the record concerning the voir dire of Juror Simmons and find no abuse of discretion. During an in-camera hearing, Juror Simmons stated twice that she could base her verdict on the evidence presented in court. Moreover, during questioning by defense counsel, Juror Simmons stated that the hearing had changed the way she had originally felt. In this age of electronics one cannot go without some exposure to the media; the question is not whether or not a person has seen a T.V. report but the prejudice or bias of the juror. A criminal defendant is not entitled to a jury of persons entirely ignorant of the facts surrounding the case, nor is such a jury necessary to protect the right to the presumption of innocence. *Wooldridge, supra.* Finally, 22 O.S.1981, § 662, provides in pertinent part:

> [n]o person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court upon his declaration, under oath or otherwise, that he can and will, not withstanding such opinion, act impartially and fairly upon the matters to be submitted to him ...

We find no error.

◼ Appellant next contends that there was insufficient evidence to support his conviction. In reviewing the sufficiency of the evidence, we must determine whether any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Schultz v. State*, 749 P.2d 559, 562 (Okl.Cr.1988). The evidence is reviewed in the light most favorable to the prosecution. *Id.*

◼ After a review of the record in the present case, we find that sufficient evidence was presented. After observing numerous bruises on Amanda's face, chest and buttocks, the emergency room doctor and nurse suspected child abuse and contacted the police. The medical examiner detailed extensive injuries to her head, abdomen and buttocks and testified that Amanda's death was caused by a blunt head injury which resulted in subdural hemorrhage. He testified that the fatal injuries occurred within two days of her death. Both physicians agreed that her death was the result of child abuse rather than by accidental falls as described by the appellant. Finally, the appellant admitted that Amanda had been mainly in his care the two days prior to her death. We find this assignment to be without merit. We further find that the trial court correctly overruled the appellant's motion for a directed verdict.

Appellant next asserts that the trial court erred in refusing to grant any of his several requests for a mistrial. However, the appellant has failed to cite any relevant authority in support of his contention. *Foster v. State*, 742 P.2d 1131, 1135 (Okl. Cr.1987). Thus, this assignment is not properly preserved for review.

◼ Appellant next argues that the trial court erred in admitting two photographs, depicting Amanda's face and buttocks, into evidence. Specifically, appellant complains that the photographs were taken after an autopsy, thereby confusing pre-mortem bruising with post-mortem lividity. Admittedly, these two photographs depict a heartbreaking scene of a child with numerous bruises over her body. Nevertheless, these photographs are admissible if their probative value outweighs their prejudicial effect. *Grayson v. State*, 747 P.2d 971, 974 (Okl.Cr.1987). Absent an abuse of discretion, the ruling of the trial court will not be disturbed. *Id.*

In the present case, the photographs served to corroborate the testimony of several witnesses as to Amanda's physical appearance, and that the color of the appellant's pictures appeared to be too light. They also indicated the various injuries suffered by Amanda, and tended to refute the

appellant's explanation of accidental fallings. Moreover, a review of the photographs reveals no evidence that an autopsy had been performed. This assignment of error is without merit.

During the guilt phase of trial, the trial court admitted into evidence a video tape of two interviews conducted by Oklahoma City Police detectives with the appellant. The interviews were conducted on the 10th and 12th of January, 1987. Appellant now asserts that the tape consists predominantly of inadmissible hearsay.

A defendant's own statements are not hearsay. *See* 12 O.S.1981, § 2801(4)(b)(1). When his statements are relevant to the issues at trial, the trial court has discretion to admit such. *Stouffer v. State*, 738 P.2d 1349, 1357 (Okl.Cr.1987) *modified on other grounds* 742 P.2d 562 (Okl.Cr.1987). *See also England v. State*, 276 P.2d 270, 276 (Okl.Cr.1954). We have reviewed the transcripts of the interviews and find no abuse of discretion. Appellant's statements were very relevant to the issue at trial, that being, whether Amanda died from accidental falls or child abuse. In the interviews, appellant described the events during the last forty-eight hours of Amanda's life. He also admitted that Amanda had been under his care during this time and that he had bruised her buttocks by spanking her too hard. We find this assignment to be without merit.

Appellant next complains of seven instructions given by the trial court during the first stage of trial. Appellant admits that he did not object to the particular instructions, nor did he submit any alternative instructions. Thus, all but fundamental error has been waived. *Goodwin v. State*, 743 P.2d 1101, 1104 (Okl.Cr.1987). We have examined each instruction cited by appellant, but find no error requiring reversal or modification. Moreover, appellant has failed to cite any relevant authority to support his arguments. Thus, the assignment was not properly preserved for review. *Foster v. State*, 742 P.2d 1131, 1135 (Okl.Cr.1987).

Appellant next complains of a comment by the prosecutor, that by explaining Amanda's injuries before he had been told what injuries she suffered, appellant had, in effect, made a plea of guilty. Appellant asserts that such comment constitutes reversible error because the prosecutor expressed his personal opinion that the appellant was guilty.

A review of the record reveals that no objection was interposed to the statement. Therefore, we will review for fundamental error only. *Wall v. State*, 745 P.2d 748, 750 (Okl.Cr.1987). Furthermore, counsel for both the State and the defense have a liberal freedom to argue the evidence and possible inferences therefrom. Only where argument by the State is grossly improper and unwarranted upon some point which may affect appellant's rights is reversal justified. *Nuam v. State*, 630 P.2d 785, 789 (Okl.Cr.1981), *cert. denied*, 454 U.S. 1058, 102 S.Ct. 609, 70 L.Ed.2d 597 (1981). We find the remark to be a permissible inference based on the evidence. This assignment is without merit.

Predictably, the appellant next argues that he was denied his Sixth Amendment right to effective assistance of counsel. Specifically, appellant complains about trial counsel's failure to object to seven different jury instructions and his failure to present any new evidence of mitigation during the second stage of trial.

Our analysis of an ineffective assistance claim begins with the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, appellant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed appellant by the Sixth Amendment. Second, the appellant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the appellant of a fair trial, a trial whose result is reliable. *Id.*, 466 U.S. at 687, 104 S.Ct. at 2064. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning

of the adversarial process that the trial cannot be relied on as having produced a just result. *Id.,* 466 U.S. at 686, 104 S.Ct. at 2063–64.

■■■ Insomuch as we have ruled that the instructions were proper, counsel's failure to object to them could not amount to error. Moreover, counsel did object to two other instructions; such objections being overruled. As to counsel's failure to present any new evidence during mitigation, we have reviewed the record, but cannot say that such strategy produced a trial whose result is unreliable. As the Supreme Court stated in *Strickland,* "even the best criminal defense attorneys would not defend a particular client in the same way." *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065. It is easy to have perfect hindsight as it relates to a trial. When one is in the "pit", the trial moves so fast and we all would probably change a few questions or approach some phase of the trial differently if we could go back, but this is not possible. The question is prejudice and we find none.

During the first stage, defense counsel presented several witnesses, including the appellant, who testified concerning the appellant's personality, behavior, and attitude toward children. The jury was presented with the appellant's defense as well as the appellant's lack of criminal history. Moreover, counsel thoroughly cross-examined each witness for the State. During the second stage, counsel moved to incorporate all first stage proceedings. Counsel then made an eloquent plea for the appellant's life during closing argument. We cannot find such performance to be constitutionally deficient.

Appellant next asserts that the statutory composite of 21 O.S.Supp.1982, § 701.7(C) and § 843 is unconstitutionally vague and overbroad. We disagree. In *Holder v. State,* 556 P.2d 1049, 1052 (Okl.Cr.1976), this Court stated of 21 O.S.1971, § 843, virtually the same statute,

> We are of the opinion that the statute is sufficiently clear and explicit that all persons of ordinary intelligence could understand its provisions. A person of com-

mon intelligence would not necessarily guess at its meaning and differ as to its application.

As only the maximum allowable sentences and age of protected children have been changed, we find no reason to alter our position. We likewise find that 21 O.S.Supp.1982, § 701.7(C) is sufficiently clear and explicit.

Appellant also complains that § 701.7(C) lacks any mens rea. We again must disagree. The intent for § 701.7(C) is found in 21 O.S. § 843 under the general intent of 'willfully' or 'maliciously'. *See Drew v. State,* 771 P.2d 224, 228 (Okl.Cr.1989). This assignment of error lacks merit.

■■■ Appellant contends that the jury instruction concerning the aggravating circumstance that "the murder was especially heinous, atrocious or cruel" was unconstitutionally vague. A review of the record reveals that the trial court used OUJI–CR 436. (O.R. 98). Therefore, the jury was apprised that the aggravating circumstance was limited to instances where torture or serious physical abuse preceded death. *See Stouffer v. State,* 742 P.2d 562 (Okl.Cr. 1987). After a review of the record, we find sufficient evidence of serious physical abuse to support this aggravating circumstance.

■■■ Appellant also asserts that the other aggravating circumstance found by the jury, that "there exists a probability the defendant would commit criminal act of violence that would constitute a continuing threat to society," is both unconstitutionally vague and unsupported by the evidence. Appellant further asserts that there must be some evidence that the appellant was predisposed to direct an act of violence towards other members of society.

This Court has repeatedly upheld the validity of this particular circumstance. *Rojem v. State,* 753 P.2d 359, 369 (Okl.Cr. 1988). *See also Barefoot v. Estelle,* 463 U.S. 880, 896–97, 103 S.Ct. 3383, 3396, 77 L.Ed.2d 1090, 1106 (1983) and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Moreover, this Court has consistently held that the calloused

manner in which a crime is committed may support a finding of a continuous threat. *Fisher v. State,* 736 P.2d 1003, 1009 (Okl. Cr.1987). After a review of the record, we also find sufficient evidence to support this aggravating circumstance.

We have reviewed the record in fulfillment of our statutory duty to determine whether the sentence of death was imposed under the influence of passion, prejudice, or other arbitrary factor. 21 O.S.Supp. 1986, § 701.13. We find that it was not. We further find that both aggravating circumstances, i.e., that the murder was heinous, atrocious, or cruel and the existence of the risk of future dangerousness to society, are sufficiently supported by the evidence.

Finding no error warranting reversal or modification, Judgment and Sentence is AFFIRMED.

AN APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA; THE HONORABLE JOHN M. AMICK, DISTRICT JUDGE

WINDEL RAY WORKMAN, appellant, was tried by jury for the crime of Murder in the First Degree in the District Court of Oklahoma County, Case No. CRF-87-254, before the Honorable John M. Amick, District Judge. The jury returned a verdict of guilty and set punishment at death. The trial court sentenced the appellant in accordance with the jury's verdict. From this Judgment and Sentence, appellant appeals. AFFIRMED.

LANE, P.J., and LUMPKIN, V.P.J., concur.

BRETT and PARKS, JJ., dissent.

BRETT, Judge dissenting:

I disagree with the majority that the trial court did not abuse its discretion in failing to excuse Juror Simmons for cause and would reverse and remand for a new trial. After inadvertently viewing a television report on the case, Juror Simmons reported to the trial judge that her ability to be fair and impartial had been impaired. At an in camera hearing, Juror Simmons stated that "I'm afraid it would take much more to convince me that he's innocent. And that's not the way it should be." (Tr. 278). The trial judge allowed counsel to question the juror. The prosecutor asked her if she could forget what she saw and follow the judge's instructions to which she responded affirmatively. However, the last question asked of her during the hearing by defense counsel was:

> MR. CASSIL: At this point do you feel like, then, that I've got to overcome your feelings; that my client, by proof, has to overcome your feelings of guilt? In other words, we have to prove more than that happened to you?
>
> JUROR SIMMONS: You would have to prove that more than just the bed—falling off—

It has been long held by this Court that if a juror has prejudged the guilt of a defendant before any evidence is presented in court, then that juror is not impartial. *Stevens v. State,* 94 Okl.Cr. 216, 232 P.2d 949, 956 (Okl.Cr.1951). All doubts as to a juror's impartiality must be resolved in favor of the defendant. *Tibbetts v. State,* 698 P.2d 942, 946 (Okl.Cr.1985). This rule applies both at the trial level and on appeal to this Court. *Hawkins v. State,* 717 P.2d 1156, 1158 (Okl.Cr.1986).

At the sentencing hearing, the trial judge stated: "I wished later that I had adopted the suggestion of putting one of the alternate jurors on the jury, not that that was required, but that it would have eliminated any question about it." (Sentencing Tr. 16–17). Obviously, the trial judge had a doubt as to this juror's impartiality, and as such abused his discretion by not excusing her for cause.

I also would like to address the admissibility of the video taped interviews of appellant by two Oklahoma City detectives. The opinion implies that appellant now complains of his statements as being inadmissible hearsay. The majority correctly states that a defendant's own statements are not hearsay. However, that is not the argument raised by appellant in his brief. Rather, he argues that the second interview conducted on January 12, 1987, was predominantly repetitious speculation from

the investigating officers as to how the child died. Appellant is correct in his assertion that the officers would not be permitted to make such statements from the witness stand and therefore should likewise not be permitted to do so through a recorded interview. I agree. However, since appellant did not object to the admissibility of the tapes on hearsay grounds at trial, reversal is only warranted on this issue if this amounts to fundamental error. While I agree that the admission of the second interview may have been error, it does not amount to fundamental error and was probably harmless.

Nevertheless, I would reverse and remand for a new trial based upon the failure of the trial court to excuse Juror Simmons for cause.

PARKS, Judge, dissenting:

I agree with Judge Brett that the trial court's failure to excuse Juror Simmons for cause amounted to reversible error. I also agree with Judge Brett that the majority has failed to correctly address appellant's assignment of error concerning the erroneous admission of hearsay statements contained in the videotape. Appellant's brief makes it clear that the hearsay of which he complains was introduced not through his own statements, but through the questions and comments of the interrogating officers. However, I disagree with Judge Brett that the admission of the videotape constituted harmless error.

In his brief appellant alleges, and I agree, that the "contents of [the tape] is predominantly repetitious speculation from the investigating officer, wherein he continually repeats his conjectural version of how he envisions the defendant perpetrated the injuries to the child." (Appellant's Brief at 34). In addition to such statements, the videotape reveals a plethora of other inadmissible and highly prejudicial comments made by both of the interrogating officers. Among other things, the officers repeatedly gave their personal opinions that appellant was lying, speculated as to the reasons why appellant beat the victim, detailed the anticipated testimony of the medical exam-

iner and other witnesses, accused appellant of having abused the victim in the past, and insinuated that appellant had a problem with abusing children.

None of the above described testimony was admissible at trial, yet it was introduced via the videotape. I find that the repeated conjecture, supposition and innuendo contained in the tape could have had no effect other than to prejudice the jury against appellant. Notwithstanding defense counsel's failure to object to the hearsay nature of the tape, I conclude that the introduction of these statements constituted fundamental error depriving appellant of a fair trial.

For the foregoing reasons, I respectfully dissent.